## STATE v. TOM HINSON.

### (Filed 1 April, 1909.)

1. **Murder—Declarations—Res Gestæ.**

    When there is testimony tending to show that prisoner, on trial for murder, made violent and determined assault on deceased, his brother, who was backing from him, knocked him down and struck him three or four times after he got up, his declarations, "I am cut," and those of the father endeavoring to separate them, "I told you to quit; you are going to get cut," are competent evidence, as a part of the *res gestæ*, that a cut with a knife which caused the death soon thereafter was inflicted by the defendant.

2. **Same—Evidence—Instructions.**

    When there is evidence tending to show that prisoner and deceased were knocking, that prisoner knocked deceased down and struck him several times after he got up, and that immediately thereafter deceased was discovered to have been cut in his right breast, a wound which caused his death, and there were declarations, competent as a part of the *res gestæ*, tending to show that deceased was then cut, it is sufficient to sustain a verdict of murder in the second degree and a charge of the court respecting it.

3. **Same.**

    When the evidence is sufficient, it is not error, to defendant's prejudice, in the trial court to charge the jury that if they were satisfied beyond a reasonable doubt that the prisoner and his deceased brother were engaged in a mutual fight, on equal terms, without use of deadly weapons; that the father interfered, endeavored to separate them, and prisoner pressed the fight and cut his unarmed retreating brother, who had quit the combat at the entreaty of his father, with a knife, which resulted in death, the prisoner would be guilty of murder in the second degree.

INDICTMENT for murder, tried before *Long, J.,* and a jury, at September Term, 1908, of ANSON.

Before the jury was impaneled, the solicitor stated to the court, in the presence of the prisoner and his counsel, that he would not ask for a verdict of murder in the first degree, but for a verdict of murder in the second degree or of manslaughter, as the facts might warrant. In apt time the court was requested, for the prisoner, to charge the jury:

1. "That if the State has failed to satisfy you beyond a reasonable doubt that Tom Hinson made the wound that caused the death of Ernest Hinson, you will find the defendant not guilty." (Given.)

2. "The court charges you that you shall render a verdict of not guilty." (Not given.)

3. "Proof to convict in this case must be such as to exclude every other reasonable hypothesis than that of the defendant's guilt; and if the State has failed, by its evidence, to exclude every other reasonable hypothesis than that the defendant killed the deceased, you will find the defendant not guilty." (Given.)

The court gave the first and third and declined to give the second prayer for instructions, and defendant excepted. In a portion of the charge the court instructed the jury as follows:

"That if the State had furnished evidence from which the jury found, and were satisfied beyond a reasonable doubt, that the prisoner and his brother, the deceased, engaged in a mutual affray and entered into a mutual combat, by consent, on equal terms, and without use of deadly weapons and without serious injury to each other, and that during the progress of the fight their father interfered, came between them, endeavored to separate them and pushed the deceased off; that if the jury further found beyond a reasonable doubt that the prisoner followed up and pressed the fight and used a knife and stabbed and cut his brother and inflicted the wound described by the witnesses, from which he soon thereafter died, and that the deceased was at the time unarmed and going back or in retreat, or in the act of quitting the combat, at the entreaty of his father, the offense of the prisoner in taking life, and with a knife inflicting the wound described, under these circumstances, if so found by the jury, would be murder in the second degree."

To this instruction the defendant excepted. There was a verdict of guilty of murder in the second degree, and from judgment on the verdict the defendant appealed.

*Attorney-General* for the State.
*J. A. Lockhart* for defendant.

HOKE, J., after stating the case: It was chiefly urged for error that the portion of the charge set forth was predicated

on evidence suggested therein, and entirely without support in the testimony. The position contended for is sound, as a general rule, certainly where it appears that the prisoner's cause has or may have been prejudiced by the course indicated; but we are of opinion that the facts presented do not bring the case within the principle. On the trial Landy Edwards, a witness for the State, testified as follows: "I looked and saw the defendant and Ernest and Wyatt Hinson. Ernest was backing out and Tom was advancing on him, both knocking. Ernest didn't get more than five or six steps. I next saw his father, Wyatt, come between the boys. He pressed Ernest off. Defendant hit at Ernest. I thought this lick hit Wyatt. Then Tom, the defendant, ran around his father and struck Ernest with his fist and knocked him down. Ernest got up; then the defendant hit him (Ernest) two or three times. Did not see what the defendant had in his hand. If he had a knife I could not tell; was not close enough. Then Ernest went to the doctor's shop, and I saw a cut in his breast, right on left breast. It was a bad-looking place. The defendant's father was holding the wound while the doctor was working on the place. Blood was oozing out of the place. Ernest is dead now. The cutting took place between 9 and 12 o'clock."

Duncan Patterson, for the State, testified: "The boys were fighting when I saw them. Ernest came out of the shed, backwards, six or eight feet, and defendant was advancing and fighting with his fist. Defendant was advancing. Couldn't say whether either had a knife. The father came between them and pressed Ernest south; was pushing Ernest more than Tom; then Tom reached back and got a piece of plank, about one inch thick and four inches wide and four or five feet long, and hit Ernest or his father; then the father pressed them apart; then Tom (the defendant) ran around and hit Ernest with his fist and knocked Ernest down. When Ernest got up, the defendant hit Ernest three or four times on the shoulder. Don't know whether he had a knife or not. About this time I said, 'Quit, boys,' and Ernest said, 'I am cut.' The father then put his hand on Ernest and pressed the gash, and said, 'I told you to quit; you are going to get cut.' Then they quit. Ernest stooped

for his hat; told me to get his hat; I did so. He clutched his breast and went to the doctor. He was cut in the right side of the breast. He was gashed to the hollow, near the middle of the side of the breast. Didn't notice clothing. I saw the wound at the doctor's. Fight took place about 10 or 11 o'clock A. M. He lived near a day. He died that night. Saw the corpse between 11 and 12 that night. Died at the doctor's office."

The doctor testified that "The deceased died from a wound in the right side of the breast, entering below the second rib, ranging downward, cutting the third and fourth ribs completely in two, and partially into the fifth rib. The wound was two or three inches deep, and into the lung from one-half to one inch. He died from the wound in the breast."

The mere statement of this evidence affords a complete answer to the objections urged for the prisoner. Here was testimony showing that the prisoner was making a violent and determined assault on the deceased, who was backing away from him; that he knocked the deceased down and struck him three or four times after he got up. Near the end of the fight, if it can be properly termed a fight, the deceased exclaimed, "I'm cut!" and just at the close the father, who had interfered, in an effort to separate his sons, was heard to say, "I told you to quit; you are going to get cut," and he died soon thereafter from a fatal cut into the lung. These exclamations of the deceased and the father come clearly within the principle and simplest instances of declarations competent as part of the *res gestæ* [*State v. Jarrel,* 141 N. C., 722; *State v. McCourry,* 128 N. C., 594; McKelvey En. (2d Ed.), 343], and, taken in connection with the other facts, fully justify the action of the court below in refusing the prisoner's second prayer for instructions, and in the charge as given.

There is no error, and the judgment below is affirmed.

No Error.