### STATE v. WALTER BETHEA.

(Filed 12 September, 1923.)

**1. Evidence—Declarations of Witness—Corroboration.**

Where the credibility of the testimony of a witness is impugned on a trial, either by proof of his bad character or his contradictory statements, or by contradictory testimony, or by cross-examination tending to impeach his veracity or memory, or by his relation to the cause or the party for whom he testified, it is competent to corroborate and support his credibility by evidence tending to restore confidence in his veracity and the truthfulness of his testimony; and such corroborating evidence may include previous statements, whether near or remote, made either pending the controversy or *ante litem motam.*

**2. Same—Witnesses—Relationship—Res Gestæ.**

> Where the mother has testified in behalf of her son, on trial for mur-
> der, that the deceased, on the occasion, had followed her son into her
> home, cursing, and that she saw on him what looked like the handle of a
> gun, etc.; that she was in an adjoining room when the prisoner shot the
> deceased; that she told her husband at the time that the deceased was
> after the prisoner with a gun: *Held*, the relationship subjected the
> mother's testimony to suspicion, if not to discredit, making competent
> the admission of her evidence of her declarations made to her husband
> at the time; and upon the admission of this evidence, the testimony of
> others to like effect was also admissible, and its rejection was reversible
> error, to the prisoner's prejudice: *Held, further*, it was competent as
> *pars rei gestæ*, being spontaneous and springing out of the occurrence,
> and relating to the contemporaneous acts and language of the deceased.

CRIMINAL ACTION tried before *Kerr, J.,* and a jury, at May Term,
1923, of WILSON.

The prisoner was convicted of murder in the first degree, and he ap-
pealed from the judgment pronouncing sentence of death.

*Attorney-General Manning and Assistant Attorney-General Frank
Nash for the State.*

*Branes & Mintz and O. P. Dickinson for the prisoner.*

ADAMS, J. The homicide occurred on Saturday night, 25 May, 1923.
About seventy-five people had come together at the home of Ratty
Bethea, father of the prisoner, to attend a festival projected for the
benefit of a church. They were entertained, it is said, with music and
dancing and "barbecue and liquor." The house had two rooms with a
porch in front. There was evidence tending to show that Peter Fields,
the deceased, had gone from the yard into the porch; that some one
"cursed out there," whereupon the prisoner's mother called to him to
come from the porch into the house; that the deceased followed and
the two went into one of the adjoining rooms; that soon afterwards the
prisoner, having a pistol in his right hand, seized the deceased and
pulled him into the other room and shot him. There was also evidence
of self-defense. The time intervening between the conversation or
"cursing" on the porch and the death of the deceased does not definitely
appear in the evidence.

The following is a synopsis of the testimony of Mary Bethea, mother
of the prisoner, who testified in his behalf: "That the party was held
at her house that night for the benefit of the church; that she went out
of her room where they were sitting to see if there was any fire in there
and heard some one curse on the porch out there and called to the
defendant, who was standing on the porch, and said, 'What is the matter
out there?' and defendant said, 'Nothing much,' and went on in the

house; that in a few seconds the deceased came in, cursing; that there was another fellow with him but did not know him; that deceased ran his hand in his pocket and was cursing and that she saw the handle of what looked like a gun. That she did not see the deceased when the defendant shot him as she was in the adjoining room where her husband was; that deceased was cursing defendant outdoors; that she heard him; that he came into the house soon after the defendant came in; that she went to her husband and told him that the deceased was after the defendant with a gun; *that she made a statement to her husband."*

The prosecution offered to prove by the witness that she told her husband, "The deceased was after the defendant, was cursing him and was going to kill him and had his hand in his pocket, and that she saw a pistol in his hand." The question is whether his Honor's exclusion of this statement deprived the prisoner of evidence to which he was justly entitled.

This Court has often held that whenever a witness has given evidence in a trial and his credibility is impugned, whether by proof of bad character or by his contradictory statements or by testimony contradicting his or by cross-examination tending to impeach his veracity or memory or by his relationship to the cause or to the party for whom he testified, it is permissible to corroborate and support his credibility by evidence tending to restore confidence in his veracity and in the truthfulness of his testimony. Such corroborating evidence may include previous statements, whether near or remote and whether made pending the controversy or *ante litem mortam. Johnson v. Patterson,* 9 N. C., 183; *S. v. George,* 30 N. C., 324; *Hoke v. Fleming,* 32 N. C., 263; *March v. Harrell,* 46 N. C., 329; *Jones v. Jones,* 80 N. C., 247; *Roberts v. Roberts,* 82 N. C., 30; *Davis v. Council,* 92 N. C., 726; *S. v. Brabham,* 108 N. C., 793; *S. v. Exum,* 138 N. C., 600; *Cuthbertson v. Austin,* 152 N. C., 336; *Bowman v. Blankenship,* 165 N. C., 519; *Belk v. Belk,* 175 N. C., 69; *S. v. Krout,* 183 N. C., 804.

In *S. v. Brabham, supra,* Shepherd, J., said: "Whatever may be the ruling in other States upon the subject, it is well settled in North Carolina that such testimony as Baker's is admissible for the purpose of corroborating a witness who has been impeached or stands in such a relationship to the parties or the action as to subject his testimony to suspicion or discredit."

Judged by the principle enounced in these cases, his Honor's exclusion of the proposed evidence was erroneous. The relation existing between the witness and the prisoner—that of mother and son—invited and justified the jury's scrutiny of her testimony and subjected her recital of the occurrence to suspicion if not discredit; and as the rejected evidence would have tended to support her claim to veracity, it

was competent for the purpose of corroboration. If this evidence had been admitted, the testimony of Marshall McDonald and others to the effect that they heard the witness make the alleged statement would likewise have been competent in support of her credibility.

Furthermore, the excluded statement was competent as *pars rei gestœ*. If accepted as true, it was the spontaneous and instinctive declaration of the witness springing out of the transaction and relating to the contemporaneous acts and language of the deceased. The fact that the shots were fired in one room and the statement was made in the room adjoining is immaterial. "The question is," says Wharton, "Is the evidence offered that of the event speaking through participants, or that of observers speaking about the event? In the first case, what was thus said can be introduced without calling those who said it; in the second case, they must be called. Nor are there any limits of time within which the *res gestœ* can be arbitrarily confined. They vary in fact with each particular case. . . . Declaration claimed to be part of the *res gestœ* may precede, accompany, or follow the transaction to which they relate. It is only when they accompany the transaction so as to be wrought up in it, and to emanate from it, that they can be rightfully regarded as excepted from the rule that excludes hearsay. . . . The distinguishing feature of declarations of this class is that they should be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate concomitants or conditions of such act, and are not produced by the calculated policy of the actors. In other words, they must stand in immediate causal relation to the act, and become part either of the action immediately *producing it* or of the action which it immediately produces. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act." Criminal Evidence, secs. 262, 263.

In *S. v. Spivey*, 151 N. C., 680, *Manning, J.*, in a learned discussion of the question, reached this conclusion : "Following the rule clearly established by these authorities, a. statement made as the 'outpouring of the mind' of one of the actors in the tragedy is competent as *pars rei gestœ*. We conceive there is, and ought to be, a distinction made between the statements of one of the parties to the tragedy and a bystander or non-participant. In the latter case, where the evidence proposed is the statement of a bystander or non-participant, whose mind is unmoved by the terrible emotions that overflow and express themselves in words uttered without design or thought or preparation, it must appear, to be admissible, that such statement was made while the thing was being done, the transaction was occurring; they ought to be strictly contemporaneous. *S. v. McCourry*, 128 N. C., 598; *Seawell v. R. R.*, 133

N. C., 515; *Harrill v. R. R.,* 132 N. C., 655; *Bumgardner v. R. R.,* 132 N. C., 442; *Means v. R. R.,* 124 N. C., 578; *S. v. Hinson,* 150 N. C., 827."

Here the statement was made "while the transaction was occurring." McKelvey on Ev., 344; Underhill on Cr. Ev., secs. 96, 97; McClain's Cr. Law, sec. 411 *et seq.; S. v. Carraway,* 181 N. C., 561.

For error in the exclusion of evidence the prisoner is entitled to a New trial.