**STATE of Maine**

**v.**

**Donald J. MELVIN.**

Supreme Judicial Court of Maine.

July 14, 1975.

Roland A. Cole, County Atty., Alfred, Fernand R. Larochelle, Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

George F. Wood, Saco, Basil L. Kellis, Ronald D. Bourque, Sanford, William S. Brodrick, South Berwick, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

A York County grand jury indicted the defendant for felonious homicide in the penalty degree of murder in the death of Raymond Archambault. The matter came

to trial in April of 1973. The defendant entered pleas of not guilty and not guilty by reason of insanity. The jury returned a verdict of guilty of murder and the defendant appealed from the Court's judgment. We deny the appeal.

A brief summary of the evidence produced by the State will be sufficient to demonstrate its capacity to prove that the defendant committed acts which if done by a sane person would constitute murder. (17 M.R.S.A. § 2651.) The defendant and several young friends with whom he shared an apartment had spent the day drinking as had been their custom for several weeks. Late that evening the defendant went with three of his friends to a lounge in Sanford where they all continued drinking. When the lounge was about to close, the defendant directed the attention of one of his companions, Wayne Brunelle, to one of the other patrons and suggested that they "roll" the patron. Brunelle went outside and waited until he saw the defendant and this patron leave and he then set out to intercept them. He soon came upon the two and seized the intended victim from behind. While this man was being held, the defendant took the man's watch and money and handed them to Brunelle. The defendant then struck the helpless victim twice, and the victim fell to the ground. The defendant straddled the victim and produced a knife which Brunelle had seen him wearing in a sheath on another occasion. As Brunelle turned away to leave the scene he heard "a couple of grunts". Brunelle started back for the apartment alone, but after about a minute was rejoined by the defendant. Together they ran most of the way back, Brunelle entering the apartment ahead of the defendant. When the defendant entered two or three minutes later, Brunelle noted that the defendant "had blood all over his arm." [1]

The defendant told his friends at the apartment that he "had just murdered somebody" and "I killed a man for a lousy three dollars." His friends saw blood on the defendant and they were forced to restrain him when he became hysterical. The knife, watch and the jacket worn by the defendant were later found in the water below a dam a short distance from the defendant's apartment.

The victim proved to be Raymond Archambault. His death had resulted from multiple stab wounds, many of which had been inflicted with great force and would, alone, have been lethal.

The defendant presented the testimony of a clinical phychologist and a psychiatrist who examined the defendant and that of a Deputy Sheriff who had observed an episode of momentary unconsciousness of the defendant which occurred while the defendant was lodged in the county jail and which the defendant contended was an epileptic seizure. The clinical psychologist expressed the opinion that the defendant suffered from a personality disorder of the sub-type known as explosive personality, which he considered to be a mental disease or defect. The psychiatrist agreed that the defendant had an explosive personality disorder and felt that, in addition, the defendant was afflicted with temporal lobe epilepsy which he said was a mental disease. He also said the defendant was a diabetic and that the long period in which the defendant consumed no food but drank a large quantity of alcohol could have produced hypoglycemia resulting in an irrational state. He expressed the opinion that the defendant's action resulted from a combination of the personality disorder, the hypoglycemia and the temporal lobe epilepsy, triggered by alcohol and an offensive remark.

The State responded with psychiatric opinion that the defendant had a personality disorder, anti-social type manifested by repeated criminal conduct, which is a behavioral problem; that epilepsy is not a

---

[1]. Brunelle, who was also indicted for the murder, testified as a witness for the State. The defendant did not take the stand.

mental disease; that epileptic seizures do not result in directed aggressive activity; and that on August 8, 1972 the defendant was not suffering from mental disease or defect.

*The Presiding Justice's Instruction to the Jury on Proof of Insanity*

After a thorough and correct explanation to the jury of the State's duty to prove beyond a reasonable doubt the various particular elements of the offense charged, the Justice told the jury:

"The burden of proof is on the defendant to establish by a preponderance of the evidence that as a result of mental disease or defect he either lacked substantial capacity to conform his conduct to the requirements of law, or lacked substantial capacity to appreciate the wrongfulness of his act—of his conduct. If the defendant has met this burden, you shall bring in a verdict of not guilty by reason of insanity. If he has not met that burden, you shall bring in a verdict of guilty of the offense which you found proved beyond a reasonable doubt, which, of course, you will have had to find before you can consider the element of insanity."

Defense counsel then approached the bench and requested this instruction:

"The burden is upon the State to prove beyond a reasonable doubt that the defendant was not suffering from a mental disease or mental defect at the time of the alleged crime."

■ The State urges us that the defendant has not properly preserved this issue for appellate review. There is substance to the State's position. The defendant made no objection to the language used in the Justice's charge,[2] and no claim is made that he was prevented from doing so. While the defendant now contends that we are required by both logic and constitutional mandate to adopt the position that the State must prove beyond a reasonable doubt that the defendant's act was not the product of a mental disease or defect, the requested instruction fell short of presenting this position to the Justice because it ignored the element of causation between the mental disease or defect and the act.[3] Even if the Justice had acceded to the point of view now argued by the defendant, the requested instruction would not in its totality have been sound law and the Justice would not have been required to give it.[4] The total effect falls short of compliance with M.R.Crim.P., Rule 30(b).

2. M.R.Crim.P., Rule 30(b):
"At the close of the evidence, or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the request. . . . No party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection.* Opportunity shall be given to make the objection out of the hearing and presence of the jury." (Emphasis added.)
M.R.Crim.P., Rule 51:
"Exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefore; but if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

3. This requested instruction was one of six separate requested instructions which counsel for the defendant put before the Court. Requested instructions, #3, #4 and #6 (regarding explosive personality disorder, temporal lobe epilepsy, and antisocial behavior, respectively) did include the necessary element of causation, but these requested instructions are not raised in the issue on appeal, nor is it suggested by defendant that the six separate instructions were intended to be interdependent as to their respective meanings.

4. State v. Robinson, 145 Me. 77, 72 A.2d 260 (1950); Glassman, Maine Practice, § 30.2.

Therefore, under our long established practice we are left to examine the Justice's instruction for obvious or manifest error.[5] We have done so.

■ The defendant concedes that the Justice's charge correctly placed the burden of proof as to mental disease or defect upon the defendant under existing Maine law as announced in State v. Lawrence, 57 Me. 574 (1870) and followed in an unbroken line of decisions including State v. Hathaway, 161 Me. 255, 211 A.2d 558 (1965) and State v. Collins, Me., 297 A.2d 620 (1972). The defendant urges us that a re-examination of our established position on this issue was necessitated by the holding of the United States Supreme Court in In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

However, the precise issue which this defendant raises has in the meantime been fully considered and decided by us in State v. Buzynski, Me., 330 A.2d 422 (1974). Buzynski was argued before—and decided after—the oral arguments in the present case. We had the benefit of the present defendant's extensive analysis of the issues involved, including his analysis of the effect of Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), of Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), and of In re Winship, supra, during the formulation of our decision in Buzynski. We concluded then that "there is no constitutional infirmity in placing upon a criminal defendant the affirmative duty of establishing by a fair preponderance of the evidence that the unlawful act with which he is charged is the product of mental disease or mental defect." 330 A.2d, supra, at 431.[6]

In addition to the analysis of judicial precedent discussed in Buzynski, we are convinced that strong policy considerations impel us to continue to hold to the Lawrence rule. Once a jury has found that a person has been unable to control his conduct and has committed acts forbidden by the criminal statutes, there is a very important public interest that he be held for public safety (and his own safety) until it has been judicially determined that there is no likelihood of his causing injury to himself or others, due to the mental injury or defect. The specific affirmative finding of causative mental disease or defect (as distinguished from a mere failure of the State to prove that there was no causative mental disease or defect) furnishes the basis for our present statutory scheme of commitment of persons whose diseased or defective mental conditions, has resulted in a criminal type of conduct. Chase v. Kearns, Me., 278 A.2d 132 (1971).

We remain unconvinced that our position must or should change.

*The Defendant's Claim of Error Because His Trial Was Not Bifurcated*

In his efforts to establish that the defendant was suffering from a mental disease which caused his violent attacks upon the victim, defendant's counsel presented through his psychiatrist and his psychologist evidence of previous violent and criminal conduct, including even a homicide of a similar nature to the one for which he was being tried. This, he says, was essential background for his experts' informed opin-

---

5. State v. McKeough, Me., 300 A.2d 755 (1973); M.R.Crim.P., Rule 52(b).

6. Since oral argument in this case the United States Supreme Court has found our Maine rule which places upon a defendant charged with murder the burden of proving that he acted in the heat of passion on sudden provocation in order to reduce the homicide to manslaughter does not comport with the requirements of the Due Process Clause of the Four-

teenth Amendment. Mullaney v. Wilbur, —— U.S. ——, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). We do not find that the rationale of this opinon demands the abandonment of our long established rule as to burden of proof of mental disease or defect. We note particularly the affirmation of the writer's belief of the continued viability of Leland v. Oregon, supra, found in the concurring opinion of Mr. Justice Rehnquist, in which the Chief Justice joins.

ions. By thus establishing his overwhelming propensity for brutal aggressiveness, the defendant argues, he unavoidably increased the likelihood that the jury would find that he had, in fact, committed this brutal killing.

The defendant urges us that the Justice should have anticipated his dilemma and ordered a bifurcated trial in which the issue of factual guilt should have been determined separately from that of mental capacity and that having failed to do so, the Justice should have declared a mistrial. We find no error.

The device of separate independent resolution of potentially prejudicial issues is new but not unknown to our practice. In 1961 (P.L.1961, ch. 268, §§ 1, 2) the Legislature provided that when the existence of a prior conviction enhances the penalty which may be imposed on a current offense, allegation of the prior offense must be separate from, and its determination must be subsequent to, that of the current offense. 15 M.R.S.A. §§ 757, 1742.

█ We recognized in State v. Buzynski, supra, that use was also being made of this new procedure on some occasions in criminal cases where a plea of not guilty by reason of mental disease or mental defect had been made. We are satisfied that a presiding Justice may properly order such a separate determination of responsibility on appropriate occasions, on motion of the defendant. Here, the defendant did not request a bifurcated trial and even if we were to concede that there might be situations in which manifest injustice would result from the failure of the Justice to order this procedure on his own motion, this was not such a situation.

Before the medical testimony concerning the defendant's prior demonstrations of explosive violence, the jury must have been completely satisfied as to the defendant's participation in the killing of the victim. The evidence as to this issue was overwhelming. The defendant had expressed an intention to "roll" the victim and had been seen walking with him only moments after they had left the bar. The eye witness had described the murder. His friends had described him as being covered with blood when he returned to the apartment. He had shown them the victim's watch, had told them that he had killed the owner and had said to them that he would now have to kill Brunelle because he was a witness to the crime. The knife, watch and the jacket which the defendant had worn were found near the defendant's apartment.

The jury had heard nothing which could be considered as contradicting the significant details of the crime. It must have been obvious that the defendant's real defense was that of lack of criminal responsibility for his brutal act. The defendant was represented by competent counsel and the record reveals a carefully planned strategy of defense which was pursued with determination and skill. It was unsuccessful but there was no miscarriage of justice. We see no reasonable possibility that the jury would have arrived at a different verdict if they had been unaware of defendant's previous criminally violent conduct. *The Presiding Justice's Refusal to Permit the Defense to Use Wayne Brunelle's Grand Jury Testimony in an Effort to Impeach Him*

Brunelle's grand jury testimony had been recorded and the State had made a copy of it available to the defense. On cross-examination, defendant's attorney sought to read to Brunelle some answer he had given to questions put to him before the grand jury which the defense contended were inconsistent with his trial testimony. He was not permitted to do so.

█ It would appear from the record that the presiding Justice considered that M.R.Crim.P., Rule 6(e) did not permit him to authorize the use of the grand jury testimony to impeach a trial witness. If so, the Justice misconceived the extent of the discretion permitted him (State v. Robbins,

Me., 318 A.2d 51, 61 (1974) ) but we are certain that no prejudice resulted to the defendant. We have read Brunelle's grand jury testimony and compared it with that which he gave at trial and we find only one real discrepancy and that one is inconsequential.

While describing at trial his participation in the assault on the victim, Brunelle testified that he got behind the victim and "grabbed him across the top of the shoulders" while the defendant took the victim's money. In his grand jury testimony Brunelle had said he had held the victim "[a]round the throat." Not only was the discrepancy insignificant, but, furthermore, there was no objection when the defense later questioned the witness about this particular discrepancy and the jury heard the witness concede he had given the somewhat different grand jury version.

The entry will be:

Appeal denied.

All Justices concurring.