STATE OF NORTH CAROLINA v. JOE LOUIS HARRIS

No. 10

(Filed 5 October 1976)

**1. Criminal Law §§ 5, 112; Homicide § 7— insanity — affirmative defense**

The rule in this State that the defense of insanity is an affirmative defense which must be shown by the defendant to the satisfaction of the jury does not contravene the decision of *Mullaney v. Wilbur,* 421 U.S. 684.

**2. Criminal Law §§ 5, 112; Homicide § 28— intent, premeditation and deliberation — insanity — burden of proof — instructions**

Where the court's instructions in a first degree murder case made it totally clear that the State had the burden of proving the elements of intent, premeditation and deliberation, and the court set the insanity defense apart as a separate issue for the jury's decision, the jury could not have been confused as to the State's burden on intent, premeditation and deliberation.

**3. Criminal Law § 5; Homicide §§ 7, 28— evidence of mental disease — effect on intent**

Evidence relating to mental disease and incapacity may not be considered by the jury in determining whether the State proves beyond a reasonable doubt the elements of specific intent to kill after premeditation and deliberation.

**4. Criminal Law § 5; Homicide § 7— insanity — effect of notice statute**

G.S. 15A-959(b) and the accompanying commentary on that statute do not establish the theory of "diminished responsibility" as law in North Carolina.

**5. Criminal Law § 5; Homicide § 7— presumption of sanity**

There is a presumption of sanity in all cases, and when there is evidence to support this presumption, this is sufficient to rebut defendant's evidence of insanity on a motion for nonsuit or for a directed verdict.

**6. Criminal Law § 5— test of insanity as defense to crime**

The test of insanity as a defense to a criminal charge is whether defendant is laboring under such a defect of reason from a disease of the mind as to be incapable of knowing the nature and quality of his acts or, if he does know this, he is incapable of distinguishing between right and wrong in relation to such acts.

**7. Criminal Law § 5; Homicide § 7— insanity as defense to murder — jury question**

The question of defendant's insanity as a defense to charges of first degree murder was a question for the jury when the testimony of several State's witnesses indicating defendant had a sane mind at the time of the crimes is considered with the presumption of sanity, particularly where defendant's expert witnesses testified only that

defendant's ability to understand the nature and quality of his acts was affected but that they did not know whether defendant was able to distinguish between right and wrong at the time of the killings.

8. **Homicide § 30— first degree murder — reliance on premeditation and deliberation — duty to instruct on second degree murder**

In all cases in which the State relies upon premeditation and deliberation to support a conviction of murder in the first degree, the trial court must submit to the jury an issue of murder in the second degree; in those cases in which the State proves a murder committed by one of the means stated in G.S. 14-17, or in the perpetration or attempted perpetration of a felony, an instruction to the jury to return a verdict of murder in the first degree or not guilty is proper, provided there is no evidence, or any inference deducible therefrom, tending to show a lesser degree.

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Hobgood, J.*, at the 6 October 1975 Criminal Session of WAKE Superior Court.

On separate indictments, proper in form, defendant was charged with the murders of Bernice Clark Harrington, Azalle Jackson, Gertrude Clark Harmon and Haveleigh Monte Ravera White. The cases were consolidated for trial and defendant entered pleas of not guilty by reason of insanity. The jury returned verdicts of guilty of murder in the first degree upon each charge and a sentence of death was imposed.

A brief discussion of the facts leading up to the murders is necessary to better understand the issues raised on this appeal. On 23 September 1974, Gertrude Clark Harmon threw lye (or some other corrosive substance) upon the face and chest of the defendant. The reason for the assault is not known. However, defendant knew Gertrude well and had dated her in the past. As a result of the assault, defendant was hospitalized for several weeks, lost his vision in the left eye and suffered severe burns upon his face and chest.

Upon release from the hospital, defendant caused a warrant to be issued against Gertrude. On 31 October 1974, a preliminary hearing was held in the matter. At the hearing, the fact of the assault was not controverted. However, Gertrude introduced evidence of her good character through the testimony of Azalle Jackson (her sister) and Haveleigh White (a close friend). Although the record is not clear, it appears that these witnesses may have made some derogatory comments about defendant.

Subsequent to the preliminary hearing, it appeared that defendant's personality changed. Whereas he previously had been outgoing and talkative, he became withdrawn and quiet. Further, he did not return to his job which he had held for twelve to fifteen years.

It was against this background that the murders of Gertrude Harmon, Azalle Jackson, Bernice Harrington and Haveleigh White occurred. It should be noted at this point that Gertrude Harmon, Azalle Jackson and Bernice Harrington were sisters.

At approximately 8:00 p.m. on 9 January 1975, defendant came to the house of Robert and Azalle Jackson. He appeared to be in a friendly mood and asked the Jacksons to come to his house. Robert, Azalle and their child then went to defendant's house. Upon arrival, defendant, by the threatened use of a pistol, forced Robert into the trunk of defendant's car. As defendant closed the trunk lid, he said, "I don't want to hurt you or your wife or your kid." While locked in the trunk, Robert could hear his child crying and heard her say, "Leave my mother alone." He also heard his wife scream and call his name. Robert was unable to hear anything thereafter because a train was passing in the distance.

After a short time, defendant opened the trunk lid and gave Robert his child. Defendant then forced Robert back into the trunk and drove the car several blocks. The car stopped and Robert heard the car door close. He then heard two shots fired and several children began to cry. Defendant again opened the trunk and released Robert and his child. Robert noticed that defendant still had the pistol. Defendant then drove away, leaving Robert in front of the house of Gertrude Harmon. Robert went into the house and found Gertrude lying on a sofa with a bullet wound in her left temple. A spent .25-caliber shell casing was located adjacent to the body.

Robert then took the two children of Gertrude and his child to his house, located next door, and called the police. Upon their arrival, Robert led the officers to defendant's house. There, the body of Robert's wife, Azalle, was found with a bullet wound in the left temple. On the floor, in close proximity to the body, two .25-caliber shell casings were found.

Defendant's house was in a state of disarray. The furniture was overturned, papers were strewn about the floor and

pictures, once hanging on the walls, were on the floor. A Bible containing a folded piece of paper was found on a coffee table in the living room. The paper had a cross drawn on it with the following statement: "Joe Louis Harris. Born July 10, 1935. Murdered September 23, 1974. [The date of the alleged lye-throwing incident.] All responsible shall pay."

At approximately 10:00 p.m., in another part of town, Haveleigh White (one of the women who testified on behalf of Gertrude Harmon at the preliminary hearing) and her grand-daughter, Mona Jervay, were returning from a meeting. They entered Mrs. White's driveway and Mona began to get out of the car. Mona saw a black man approach Mrs. White and fire several shots. She then saw Mrs. White fall to the ground. The man who fired the shots then got into his car and drove away. Two .25-caliber shell casings were found adjacent to the victim's body and a .25-caliber slug was found in the victim's chest.

Several hours later, the body of Bernice Harrington was found in the woods behind defendant's house. Bernice had been shot in the head. A trail of blood led from defendant's house to the spot where Bernice was found, indicating that the victim had been dragged from the house into the woods. A .25-caliber shell casing was found at the rear of the house close to a pool of blood.

The State further introduced evidence that defendant had stated to Gertrude during a telephone conversation on 28 December 1974, " . . . I am going to kill you and kill all the Clarks." The State also introduced expert ballistics testimony that all of the shell casings recovered adjacent to the victims' bodies were .25-caliber and fired from the same gun, and that all of the slugs recovered from the victims were .25-caliber and fired from the same gun. Medical testimony showed that each of the victims died as a result of these gunshot wounds. A neighbor of the defendant testified that defendant had a .25-caliber pistol and was an excellent marksman.

The defendant did not take the stand. He did, however, introduce evidence as to his insanity. Several of defendant's neighbors, friends, and co-workers testified concerning defendant's personality before and after the lye-throwing incident on 23 September 1974. This testimony tended to show that prior to 23 September 1974, defendant was an outgoing, civic-minded individual with a good work record. After the lye-

throwing incident and the preliminary hearing on 31 October 1974, the testimony was to the effect that defendant became a recluse who seldom ventured outside or wanted any contact with his friends.

Defendant also introduced expert medical testimony concerning his mental condition at the time of the murders. Dr. William Taylor of the Forensic Unit at Dorothea Dix Hospital testified that he interviewed defendant approximately a week after the murders and continued to do so during the next five months. He described defendant as extremely depressed and very self-conscious about his eye injury. Dr. Taylor also stated that defendant was unable to recall any of the events of the evening of 9 January 1975, and cried uncontrollably whenever the subject was raised. Dr. Taylor gave his opinion that defendant's injury had caused a psychological disorder and that this disorder affected defendant's ability to understand the nature and quality of his acts. However, Dr. Taylor was unable to give any opinion as to whether defendant understood the nature and quality of his acts on 9 January 1975, and he did not know whether defendant knew right from wrong at the time of the murders.

Frank Masur, an expert in clinical psychology at Dorothea Dix Hospital, then testified as to defendant's mental condition. Witness Masur stated, in substance, that defendant was very depressed and preoccupied with his eye injury. He testified that the psychological disorder caused by the injury impaired defendant's judgment to such an extent that defendant's ability to understand the nature and quality of his acts on 9 January 1975 was impaired. The witness further testified that he had no opinion as to whether defendant was able to distinguish right from wrong on 9 January 1975.

Additional facts necessary to the decision of these cases will be discussed in the opinion.

*Attorney General Rufus L. Edmisten and Associate Attorney Elizabeth C. Bunting for the State.*

*W. Brian Howell for defendant appellant.*

MOORE, Justice.

[1]   Defendant first attacks the North Carolina rule that places upon defendant the burden of proof on the defense of insanity. Defendant concedes in his brief that North Carolina has long

adhered to the view that the defense of insanity is an affirmative defense which must be shown by the defendant to the satisfaction of the jury. *See State v. Caddell,* 287 N.C. 266, 215 S.E. 2d 348 (1975); *State v. Cooper,* 286 N.C. 549, 213 S.E. 2d 305 (1975), and cases cited therein. He contends, however, that this is error because of the decision of the United States Supreme Court in *Mullaney v. Wilbur,* 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975).

We have reexamined these cases in the light of *Mullaney* and have decided that *Mullaney* does not require, upon due process considerations, the reallocation of the burden of proof on the issue of insanity. *State v. Hammonds,* 290 N.C. 1, 224 S.E. 2d 595 (1976); *State v. Shepherd,* 288 N.C. 346, 218 S.E. 2d 176 (1975). Other jurisdictions have reached the same conclusion. *See Rivera v. State,* 351 A. 2d 561 (Del. 1976); *Grace v. Hopper,* 234 Ga. 669, 217 S.E. 2d 267 (1975); *State v. Melvin,* 341 A. 2d 376 (Maine 1975); *accord, Hill v. Lockhart,* 516 F. 2d 910 (8th Cir. 1975). Defendant, in his brief, cites only one case holding to the contrary: *Commonwealth v. Williams,* 344 A. 2d 877 (Pa. 1975). An examination of these decisions convinces us that we should adhere to our holdings in *State v. Shepherd, supra,* and *State v. Hammonds, supra.*

Defendant contends, however, that the decision in *State v. Hammonds, supra,* on the defense of insanity is unsound in that it erroneously relied, in part, upon an excerpt from a concurring opinion to *Mullaney.* In this excerpt, Justice Rehnquist states:

"I agree with the Court that *In re Winship,* 397 U.S. 358 [25 L.Ed. 2d 368, 90 S.Ct. 1068] (1970), does require that the prosecution prove beyond a reasonable doubt every element which constitutes the crime charged against a defendant. I see no inconsistency between that holding and the holding of *Leland v. Oregon,* 343 U.S. 790 [96 L.Ed. 1302, 72 S.Ct. 1002] (1952). In the latter case this Court held that there was no constitutional requirement that the State shoulder the burden of proving the sanity of the defendant." 421 U.S. at 705, 44 L.Ed. 2d at 523, 95 S.Ct. at 1893.

The question apparently raised by defendant in the cases at bar is whether *Leland v. Oregon, supra,* cited within the above concurrence, is supportive of the decision in *Hammonds.*

In *Leland,* the petitioner raised the issue of whether an Oregon statute placing the burden upon a defendant to prove an insanity defense beyond a reasonable doubt was a deprivation of due process. The Court held that due process was not violated by the state's casting upon defendant the burden of proving insanity "beyond a reasonable doubt." The Court also stated that there was no due process violation caused by Oregon's adoption of the "right and wrong" (M'Naghten) test, rather than the "irresistible impulse" test of insanity.

It is true, as the defendant in the present cases points out, that the jury instructions given in *Leland* did allow the jurors to consider the issue of insanity on the elements of intent, premeditation and deliberation. The Court noted, however, that these instructions merely served to emphasize that the State had the burden of proof on these elements.

[2]  In the cases at bar, the instructions given by the trial judge made it totally clear that the State had the burden in proving these elements. Furthermore, like the trial judge in *Leland,* the trial judge here set the insanity defense apart as a separate issue for the jury's decision. The jury in the present cases, therefore, could not have been confused as to the State's burden on intent, premeditation and deliberation. Thus, *Leland v. Oregon, supra,* does not command that we reach a different conclusion in this case, nor in *State v. Hammonds, supra.*

[3]  Defendant urges the Court to adopt the viewpoint that evidence of abnormal mental condition should be considered on the issue of specific intent. He contends that evidence relating to mental disease and incapacity should be considered in determining whether the State proves beyond a reasonable doubt the elements of specific intent to kill after premeditation and deliberation. Suffice it to say, we have rejected this argument in *State v. Cooper, supra,* and in *State v. Hammonds, supra,* and again we do so in this case.

Defendant next argues that G.S. 15A-959 conflicts with this Court's decision in *State v. Hammonds, supra.* This section reads as follows:

"*Notice of defense of insanity.*— (a) If a defendant intends to raise the defense of insanity, he must within the time provided for the filing of pretrial motions under G.S. 15A-952 file a notice of his intention to rely on the defense

of insanity. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make other appropriate orders.

"(b) If a defendant intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he must within the time provided for the filing of pretrial motions under G.S. 15A-952(b) file a notice of that intention. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make other appropriate orders."

Following this section, the commentary contains the following passage:

" . . . A defendant intending to raise the defense of insanity would almost always wish to come forward with his own expert; however, there may be a number of situations where the defense of insanity is not technically raised but expert testimony as to mental state will be introduced to negative the defendant's culpability with respect to some element of the offense. This section would require notice in either situation."

[4]  It is contended by defendant that G.S. 15A-959(b) and the accompanying commentary establishes the theory of "diminished responsibility" as law in North Carolina and, as such, conflicts with *Hammonds*. We deem it implausible that the Criminal Code Commission, which drafted the statute and wrote the commentary, would implant a new and far-reaching theory on North Carolina law by implication or through the text of explanatory material. If the statute was intended to establish the principle of diminished responsibility, this would have been done in the body of a statutory section, not by implications in the commentary. Further, G.S. 15A-959 is a notice statute dealing with pretrial procedure and not with substantive law. We hold, therefore, that the statute does not conflict with *State v. Hammonds, supra,* and no reconsideration of that case is required.

It is next contended that the trial court erred in denying defendant's various motions for nonsuit, directed verdicts and new trial. Defendant urges quite strenuously that the motion for

directed verdicts on the specific charges of first degree murder should have been granted. The ground for this contention is that the State failed to adduce sufficient evidence bearing upon the defendant's sanity at the time of the murders.

[5]   A motion for a directed verdict of not guilty has the same effect as a motion for judgment as of nonsuit. *State v. Cooper, supra; State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974). It is well settled that on such motion the court is to consider the evidence in the light most favorable to the State. Any conflicts and discrepancies in the evidence are to be resolved in the State's favor and the State is entitled to every reasonable inference which may be drawn therefrom. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967). Further, in all cases there is a presumption of sanity, and when there is other evidence to support this presumption, this is sufficient to rebut defendant's evidence of insanity on a motion for nonsuit or for a directed verdict. *State v. Hammonds, supra.*

In the cases at bar, there was evidence from several State's witnesses which indicated a sane mind. Robert L. Jackson, Jr. testified that just prior to the crimes defendant acted in a friendly manner. On cross-examination, this witness testified that defendant had stated when he came to the Jackson's door, "Good Evening. How are you doing?" Shortly thereafter, according to Mr. Jackson, defendant stated that he did not want to hurt Mr. Jackson, his wife or his child. When the police arrested defendant, they questioned a group of people as to who was Joe Louis Harris. Defendant immediately said, "I am Joe Harris." The arresting officer testified that defendant gave the police no difficulty when apprehended. There was no evidence that defendant acted abnormally immediately after the crimes were committed. Although defense witnesses did indicate that defendant had not been acting normally prior to the crimes, such evidence need not be considered on a nonsuit motion under the holding of *State v. Hammonds, supra.*

The defendant also offered two expert psychiatric witnesses. Both witnesses stated flatly that they did not know whether defendant was able to distinguish between right and wrong at the time of the murders. Both of the witnesses stated that at the time of the murders defendant's ability to understand the nature and quality of his acts was affected.

[6]   It is well established in this State that the test of insanity as a defense to a criminal charge is whether defendant

is laboring under such a defect of reason from a disease of the mind as to be incapable of knowing the nature and quality of his acts or, if he does know this, he is incapable of distinguishing between right and wrong in relation to such acts. *State v. Cooper, supra; State v. Humphrey,* 283 N.C. 570, 196 S.E. 2d 516 (1973), *cert. den.,* 414 U.S. 1042, 38 L.Ed. 2d 334, 94 S.Ct. 546 (1973); *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793 (1970); *State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328 (1968).

[7]  In the instant cases, the testimony of the two expert witnesses was not sufficient to support a motion for nonsuit. This is particularly true in the light of *State v. Shepherd, supra,* wherein two expert witnesses testified that defendant did *not* know the difference between right and wrong. In that case, there was also evidence tending to show that defendant was sane. The Court in *Shepherd* held that since some evidence of sanity was presented, the trial court's denial of the nonsuit motion was proper. In the cases at bar, based upon the above testimony and the presumption of sanity, there was even stronger reason for denying the proffered motions. Any conflicts in the evidence of sanity were properly an issue for the jury.

Finally, defendant assigns as error the refusal of the trial court to submit to the jury the question of defendant's guilt of second degree murder. He contends that inasmuch as the felony-murder rule was not applicable to the individual homicides charged herein, the trial court was required to submit to the jury the question of defendant's guilt of second degree murder as to each of the charges. He insists that considering the State's evidence, in the light most favorable to the State, the jurors could have concluded that the defendant committed each of the homicides. However, as to whether each homicide was committed with premeditation and deliberation, defendant contends that the evidence was wholly circumstantial and the jurors could have found that the State had failed to prove beyond a reasonable doubt that the defendant did premeditate and deliberate on each homicide. Defendant cites *State v. Perry,* 209 N.C. 604, 184 S.E. 545 (1936), in support of this position.

In *Perry,* the defendant was tried upon an indictment charging first degree murder. The State introduced sufficient evidence to support a conviction of first degree murder based upon

premeditation and deliberation. No evidence was introduced tending to show that the murder was committed by any of the statutory means stated in C.S. 4200 (now G.S. 14-17) or in the perpetration or attempted perpetration of a felony. The trial court instructed the jury to return a verdict of murder in the first degree or not guilty. This Court held that the failure to submit an issue of murder in the second degree was error. In reaching this conclusion, the Court stated:

"It is only in cases where all of the evidence tends to show that the homicide was committed by means of poison, lying in wait, imprisonment, starving, torture, or in the perpetration or attempt to perpetrate a felony, that the trial judge can instruct the jury that they must return a verdict of murder in the first degree or not guilty. In those cases where the evidence establishes that the killing was with a deadly weapon the presumption goes no further than that the homicide was murder in the second degree, and if the State seeks a conviction of murder in the first degree it has the burden of proving beyond a reasonable doubt that the homicide was committed with deliberation and premeditation. Under such circumstances it is error for the trial judge to fail to submit to the jury the theory of murder in the second degree, since it is the province of the jury to determine if the homicide be murder in the first or in the second degree, that is, whether they, the jury, are satisfied beyond a reasonable doubt, from the evidence, that the homicide was committed with deliberation and premeditation. . . . " 209 N.C. at 605-06, 184 S.E. at 546.

The holding in *Perry* was based upon the cases of *State v. Spivey,* 151 N.C. 676, 65 S.E. 995 (1909), and *State v. Newsome,* 195 N.C. 552, 143 S.E. 187 (1928). In *Spivey,* the defendant was charged with first degree murder. The State introduced evidence that defendant killed the victim either by "lying in wait" or in the attempted perpetration of a felony (arson). The defendant introduced evidence of alibi. The trial court instructed the jury to return a verdict of guilty of murder in the first degree or not guilty. This Court held that there was no error in the trial judge's refusal to submit an issue of murder in the second degree. The Court stated:

"After a careful review of the decisions of this Court, and a critical examination of the statute (Revisal, sections

3631 and 3271) [now G.S. 14-17], we deduce the following doctrine: Where the evidence tends to prove that a murder was done, and that it was done by means of poison, lying in wait, imprisonment, starving, torture, or which has been committed in perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, and where there is no evidence and where no inference can fairly be deduced from the evidence of or tending to prove a murder in the second degree or manslaughter, the trial judge should instruct the jury that it is their duty to render a verdict of 'guilty of murder in the first degree,' if they are satisfied beyond a reasonable doubt, or of 'not guilty.' . . . " 151 N.C. at 685-86, 65 S.E. at 999.

The second case relied upon in *Perry* was *State v. Newsome, supra.* In *Newsome,* there was evidence tending to show that the defendant murdered the victim either during an attempted rape or with premeditation and deliberation. The trial judge instructed the jury that it could return a verdict of murder in the first degree or not guilty. The judge refused to submit an issue of second degree murder. This Court held that this refusal was error. The Court reaffirmed the rule enunciated in *State v. Spivey, supra.* The Court, however, enunciated a different rule for those cases in which the State bases its first degree murder charge upon premeditation and deliberation:

" . . . When, however, the State relies upon evidence tending to show . . . deliberation and premeditation, the jury should be instructed that if they fail to find from the evidence, beyond a reasonable doubt, that the murder . . . was committed after deliberation and premeditation, they should return a verdict of guilty of murder in the second degree, provided, of course, they shall find from the evidence, beyond a reasonable doubt, that the defendant committed the murder." 195 N.C. at 563-64, 143 S.E. at 193.

The Court then stated the reason for this rule:

" . . . Deliberation and premeditation, if relied upon by the State, as constituting the homicide murder in the first degree, under the statute, must always be proved by the evidence, beyond a reasonable doubt. In such case, under the statute as construed by this Court, it is for the jury and not the judge to find the fact of deliberation and

premeditation, from the evidence, and beyond a reasonable doubt. Premeditation and deliberation are always matters of fact to be determined by the jury, and not matters of law to be determined by the judge." 195 N.C. at 564, 143 S.E. at 193.

This same reasoning was used by Justice Bobbitt (later Chief Justice) in *State v. Propst,* 274 N.C.' 62, 71, 161 S.E. 2d 560, 567 (1968):

" . . . The additional elements of premeditation and deliberation, necessary to constitute murder in the first degree, must be established beyond a reasonable doubt, and found by the jury, before the verdict of guilty of murder in the first degree can be returned; and the burden of so establishing these additional elements of premeditation and deliberation rests and remains on the State. [Citations omitted.]"

[8] We hold, therefore, that in all cases in which the State relies upon premeditation and deliberation to support a conviction of murder in the first degree, the trial court must submit to the jury an issue of murder in the second degree. Again, we reaffirm the rule originally stated in *State v. Spivey, supra,* that in those cases in which the State proves a murder committed by one of the means stated in G.S. 14-17, or in the perpetration or attempted perpetration of a felony, an instruction to the jury to return a verdict of murder in the first degree or not guilty is proper; provided, that there is no evidence, or any inference deducible therefrom, tending to show a lesser offense. *See State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885 (1969); *State v. Spivey, supra.*

In the present cases, the issue of premeditation and deliberation was for the jury. The refusal of the able trial judge to submit an issue of second degree murder, therefore, was error. This error entitles defendant to a new trial.

Other assignments of error present questions which probably will not recur at another trial. Discussion thereof is unnecessary and inappropriate at this time.

For the reasons stated above, defendant is entitled to a new trial and it is so ordered.

New trial.