STATE OF NORTH CAROLINA v. AUBREY LEWIS POOLE

No. 9

(Filed 3 October 1979)

1. **Homicide § 30— first degree murder charged—instruction on second degree murder required**

     The trial court in a first degree murder prosecution should have instructed the jury on second degree murder, since (1) evidence that defendant had a conversation with deceased inside and outside a bar, told deceased's companion that deceased "had gone for bad," ran to his pickup truck, pulled out his rifle, slung the barmaid out of the way when she tried to intercede, and then shot deceased once was sufficient for the jury to infer that defendant did not think before acting and did not act cooly and calmly with premeditation and deliberation; and (2) where the State relies upon premeditation and deliberation to support a conviction of first degree murder, the court must submit to the jury an issue of murder in the second degree.

2. **Criminal Law §§ 73.2, 73.4— spontaneous utterance—corroborative testimony**

     Testimony by an eyewitness to a murder that, when defendant ran to his pickup truck to get his rifle, a barmaid ran up to the truck and said, "Pee Wee, stop, don't do it," was admissible as a spontaneous utterance; furthermore, testimony by a detective as to what the eyewitness told him was admissible to corroborate the eyewitness's testimony.

     Justice BROCK did not participate in the consideration or decision of this case.

     Justice HUSKINS dissenting in part.

APPEAL by defendant from *Collier, J.,* at the 2 October 1978 Criminal Session of IREDELL Superior Court.

The defendant was charged in an indictment, proper in form, with the first degree murder of Ivory Alfonzo Vanderburg. In a warrant he was charged with the misdemeanor of assault by pointing a gun at James Edward Caldwell. The defendant pleaded not guilty to both charges, and the cases were consolidated for trial over the objection of the defendant.

The evidence for the State tended to show the following:

After playing in a softball game on 22 April 1978, Vanderburg asked Caldwell to take him home. The two stopped off for a beer at the home of Mr. Redfer, the manager of their ball team. After the two left Redfer's house in Caldwell's car, they proceeded on Highway 21 toward Vanderburg's house. As they approached Baxter's, which is a grocery store—beer parlor—gas station located on Highway 21 between Mooresville and Troutman, Vanderburg suggested that they stop for a beer.

When they went inside the station, Caldwell noticed that there were twenty to twenty-five people in the bar area, and he and Vanderburg were the only blacks present. Caldwell ordered two beers and spoke to the barmaid because he knew her "indirectly from other places." Caldwell felt a rush of air go past his head (apparently resulting from defendant swinging at him with his fist) which caused him to drop his beer. He turned and faced the defendant, Aubrey Lewis Poole, whose nickname was Pee-Wee. Caldwell asked the defendant why he had swung at him, and defendant said it was because the barmaid was his girl. Caldwell explained that he knew her. Defendant apologized and replaced his beer. Defendant and Vanderburg then had a conversation, but Caldwell testified that no harsh words were spoken by anyone in the bar. Caldwell grabbed Vanderburg's arm and the two left the bar. Defendant and everyone else in the bar followed the two as they left.

Outside, defendant approached Caldwell and apologized again and then told him that he could come back any time, but that Caldwell's friend "had gone for bad." Defendant then exchanged a few words with Vanderburg which Caldwell could not make out. Defendant then ran to his truck and pulled out a rifle from behind the seat. The barmaid ran from the door of the bar to the truck and said, "Pee Wee, stop, don't do it." Defendant "slung her out of the way" and put a clip in his rifle. Vanderburg began to run,

and defendant fired one round. Vanderburg dropped to the pavement. Defendant then walked up to Caldwell, pointed the gun at him, and said that he would have to kill him also since he was the only witness. Caldwell pleaded with the defendant, and defendant told him he could go. Officer Dagenhart, who had interviewed Caldwell, substantially corroborated Caldwell's testimony.

Defendant relied upon the defense of alibi. Six witnesses testified for the defense that they were inside Baxter's when they heard a shot outside. All six witnesses testified that the defendant was also inside, working at the bar when the shot was fired. The witnesses testified that everyone in the bar, including the defendant, went outside *after* the shot was fired in order to see what had happened.

The jury found the defendant guilty of first degree murder and assault by pointing a gun. At the sentencing phase on the murder conviction, the jury recommended life imprisonment. The trial court consolidated the two convictions for judgment and sentenced the defendant to life imprisonment. The trial court imposed no separate sentence for the assault conviction and there was no appeal to the Court of Appeals and thus, no motion to bypass that court on the assault conviction. The defendant has properly appealed his murder conviction to this Court.

Other facts relevant to the decision will be related in the opinion below.

*Jack R. Harris and Edwin A. Pressly for the defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Elizabeth C. Bunting for the State.*

COPELAND, Justice.

[1] In his sixteenth assignment of error, the defendant claims the trial court erred in failing to submit the issue of second degree murder to the jury. We agree; therefore, the defendant must be granted a new trial.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G.S. 14-17; *State v. Robbins*, 275 N.C. 537, 169 S.E. 2d 858 (1969).

Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963).

Premeditation means thought beforehand for some length of time, however short. *State v. Buchanan*, 287 N.C. 408, 215 S.E. 2d 80 (1975).

Deliberation means an intention to kill, executed by the defendant in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge or to accomplish some unlawful purpose. . . . *State v. Faust*, 254 N.C. 101, 118 S.E. 2d 769 (1961).

The jury should be instructed on a lesser included offense when there is evidence from which the jury could find that such lesser included offense was committed. *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979); *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971). Error in failing to submit the question of defendant's guilt of a lesser degree of the same crime is not cured by a verdict of guilty of the offense charged because it cannot be known whether the jury would have convicted of a lesser degree if the different permissible degrees arising on the evidence had been correctly submitted to the jury. *State v. Duboise, supra.*

Here, there is some evidence from which the jury could infer that the defendant killed Vanderburg without premeditation and deliberation. The evidence discloses that the defendant had a conversation with Vanderburg both inside and outside the bar. Caldwell did not overhear those conversations, but the defendant did tell Caldwell while apologizing to him that his friend Vanderburg "had gone for bad." Immediately after the exchange of words between the defendant and Vanderburg, defendant ran to his pickup truck, pulled out his rifle and clip, "slung" the barmaid out of the way when she tried to intercede, and then the defendant shot Vanderburg once.

From this evidence a jury could infer that the defendant did not think before acting and did not act cooly and calmly with premeditation and deliberation. Therefore, it was error for the trial court not to instruct on second degree murder. This is not to say that it was error for the trial court to instruct on first degree murder. The circumstantial evidence of premeditation and

deliberation cuts both ways on the facts of this case, and the court should have instructed on both first and second degree murder.

Assuming *arguendo* that there was no positive evidence of the absence of premeditation and deliberation, the trial court was still required to submit the issue of second degree murder to the jury. In the instant case the state relied upon premeditation and deliberation to support a conviction of murder in the first degree. In *State v. Harris*, 290 N.C. 718, 730, 228 S.E. 2d 424, 432 (1976), we held that, "in all cases in which the State relies upon premeditation and deliberation to support a conviction of murder in the first degree, the trial court must submit to the jury an issue of murder in the second degree." This requirement is present because premeditation and deliberation are operations of the mind which must always be proved, if at all, by circumstantial evidence. If the jury chooses not to infer the presence of premeditation and deliberation, it should be given the alternative of finding the defendant guilty of second degree murder. *State v. Keller*, 297 N.C. 674, 256 S.E. 2d 710 (1979).

For the above two reasons, the defendant is entitled to a new trial.

We note that the appeal of the assault conviction is not properly before us as the Court of Appeals has original jurisdiction of appeals of misdemeanor convictions. G.S. 7A-27. It would have been the better practice for the trial judge to have imposed a separate sentence for the assault conviction and then run it concurrently with the murder sentence, if that is what he desired to accomplish.

We shall comment only briefly upon those of his remaining assignments of error which raise issues likely to recur on retrial.

In his eighth assignment of error, defendant raises two issues concerning hearsay statements that the trial court admitted into evidence over defendant's objection.

[2] Caldwell testified that when the defendant ran to his pickup truck to get his rifle, the barmaid ran up to the truck and said, "Pee Wee, stop, don't do it." This statement is clearly admissible as a "spontaneous and instinctive declaration of the witness

State v. Poole

springing out of the transaction and relating to the contemporaneous acts" of the defendant. *State v. Bethea*, 186 N.C. 22, 25, 118 S.E. 800, 801 (1923).

Detective Dagenhart testified that Caldwell told him that, "he heard his (the defendant's) name mentioned as Pee Wee." This statement appears to contain double hearsay because it states what Caldwell told the detective that he heard someone else say. What Caldwell heard someone else say has been discussed above and found to meet a hearsay exception. The detective's testimony about what Caldwell told him corroborates Caldwell's testimony because Caldwell had already testified that the barmaid called the defendant, "Pee Wee." Testimony by one witness that corroborates the testimony of another witness is admissible for that purpose and is not hearsay since it is not offered to prove the truth of the matter asserted therein. *State v. Best*, 280 N.C. 413, 186 S.E. 2d 1 (1972). The prior statement should be considered only for the purpose of corroboration, and the trial court should so instruct the jury. However, when the limiting instruction is not asked for by the defendant, it is not error if it is not given. *State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745 (1972), *cert. denied*, 410 U.S. 958 (1973).

We deem it unnecessary to discuss defendant's remaining assignments of error, inasmuch as the matters which gave rise to them probably will not recur on retrial.

New trial.

Justice BROCK did not participate in the consideration or decision of this case.

Justice HUSKINS dissenting in part.

This Court held in *State v. Harris*, 290 N.C. 718, 228 S.E. 2d 424 (1976), that "in all cases in which the State relies upon premeditation and deliberation to support a conviction of murder in the first degree, the trial court must submit to the jury an issue of murder in the second degree." We reaffirmed that holding in *State v. Keller*, 297 N.C. 674, 256 S.E. 2d 710 (1979). On further reflection, however, I am convinced that *Harris* and *Keller* perpetuate an unnecessary refinement in the law.

Submission of a lesser included offense when there is no evidence to support the milder verdict is not required when the indictment charges felony murder, arson, burglary, robbery, rape, larceny, felonious assault, or any other felony whatsoever. In all such cases if the evidence tends to show that the crime charged in the indictment was committed and there is no evidence tending to show commission of a crime of lesser degree, the court correctly refuses to charge on unsupported lesser degrees. The *presence* of evidence tending to show commission of a crime of lesser degree is the determinative factor. *State v. Fleming*, 296 N.C. 559, 251 S.E. 2d 430 (1979); *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971), and cases there cited; *State v. Hicks*, 241 N.C. 156, 84 S.E. 2d 545 (1954).

For the reasons stated I no longer support the majority view which requires the court to submit second degree murder as a permissible verdict in a prosecution for premeditated first degree murder when there is no evidence to support the lesser degree.