STATE v. COBLE

[134 N.C. App. 607 (1999)]

———————

STATE OF NORTH CAROLINA v. JERRY ALFRED COBLE

No. COA98-1164

(Filed 17 August 1999)

1. **Homicide— attempted second-degree murder—specific intent to kill—underlying malice**

    The trial court did not err in holding the crime of attempted second-degree murder does exist in North Carolina when a specific intent to kill is implicit in the underlying malice.

2. **Homicide— attempted second-degree murder—jury instructions—intent to kill—no premeditation and deliberation**

    The trial court did not err in instructing the jury on attempted second-degree murder because the jury could conclude that defendant did have intent to kill, but had not undertaken the premeditation and deliberation required for a conviction of attempted first-degree murder.

Appeal by defendant from judgment entered 26 March 1998 by Judge J.B. Allen, Jr., in Alamance County Superior Court. Heard in the Court of Appeals 20 May 1999.

———————

*Michael F. Easley, Attorney General, by Elizabeth Leonard McKay, Special Deputy Attorney General, for the State.*

*Cheshire, Parker, Schneider, Wells & Bryan, by Joseph B. Cheshire, V, and John Keating Wiles, for defendant-appellant.*

EDMUNDS, Judge.

Late on the evening of 24 April 1997, defendant drove his tractor-trailer truck past the home of his cousin, Gary Paul Williams. As he did so, defendant sounded the truck's air horn. The blast was loud and lingered long enough to awaken Williams' young children. Williams, having seen the trailer of defendant's truck parked at a nearby Texaco, drove to that service station to ascertain the reason for the noise. When he arrived, Williams did not see defendant, so he put gas in his car. After paying for the fuel, however, Williams spotted defendant and approached him. Following a brief confrontation, a fight ensued, during which defendant repeatedly threatened to kill Williams if he could get to his gun.

The combatants separated when Williams pushed defendant away. Defendant retrieved a pistol from his truck while Williams ran into the Texaco and hid. Defendant took a long look into the service station, then fired shots, both into the air and into Williams' vehicle, while yelling obscenities and threatening Williams' life. When the police arrived, defendant was looking in the service station and pointing a firearm inside. After securing defendant, the police recovered a loaded 9 mm Baretta on defendant's person and a .380 pistol and clip from defendant's tractor-trailer truck.

Defendant was indicted and tried for the attempted murder of Williams, in violation of N.C. Gen. Stat. § 14-17 (Cum. Supp. 1998). Over defendant's objection, the trial court instructed the jury on attempted second-degree murder, in addition to attempted first-degree murder. The jury found defendant guilty of attempted second-degree murder, and the court imposed a sentence of 100 to 129 months imprisonment.

I.

[1] Initially, defendant raises the issue whether the offense of attempted second-degree murder may logically exist. He argues that while the offense of second-degree murder does not require a specific intent to kill, attempt does require an intent to commit the underlying crime. *See State v. Brayboy,* 105 N.C. App. 370, 413 S.E.2d 590, *disc.*

*review denied,* 332 N.C. 149, 419 S.E.2d 578 (1992). Therefore, defendant contends, "because one cannot specifically intend a crime of general, or non-specific, intent, such as second degree murder," conviction of attempted second-degree murder is a "legal impossibility." Although defendant has raised an important issue and briefed it cogently, we disagree, and hold that the crime of attempted second-degree murder does exist in North Carolina.

We begin our analysis by reviewing earlier cases on this issue. Although prior cases discussed "attempted murder" without specifying whether the degree was first or second, the first case that specifically addressed attempted second-degree murder is *State v. Lea,* 126 N.C. App. 440, 485 S.E.2d 874 (1997), which involved a shootout between two vehicles on a highway. Although no one was hit, one of the vehicles crashed, injuring a number of individuals. The driver of the other vehicle was charged with attempted second-degree murder, while his passenger, who did the shooting, was charged with attempted first-degree murder. The defendant driver argued that he could not be charged with any attempt, because the evidence demonstrated completed actions. This Court disagreed, and affirmed the conviction, holding that the defendant's actions constituted conduct that fell short of a completed offense. *See id.* at 445, 485 S.E.2d at 877.

Attempted second-degree murder came before this Court again in *State v. Cozart,* 131 N.C. App. 199, 505 S.E.2d 906 (1998), *disc. review denied,* 350 N.C. 311, —— S.E.2d —— (1999), where the defendant, convicted of attempted first-degree murder, contended that the jury also should have been instructed as to attempted second-degree murder. Accepting defendant's premise that the offense of attempted second-degree murder existed, this Court held that there was insufficient evidence to support such an instruction. Our Supreme Court, faced with a similar argument, reached a similar result in *State v. Smith,* 347 N.C. 453, 496 S.E.2d 357 (1998).

We are constrained and guided by our precedent. Thus, while North Carolina appellate courts previously have assumed the existence of attempted second-degree murder and have shown no skepticism toward the existence of the crime, they have never directly confronted the challenge raised here by defendant. Because this Court has been advertent to logical inconsistencies in the law, *see Lea,* 126 N.C. App. 440, 485 S.E.2d 874 (holding that attempted felony murder is a logical impossibility), we find guidance in our previous ready acceptance of the offense of attempted second-degree murder.

Next, we turn to an analysis of the applicable law. The elements of second-degree murder are: (1) the killing (2) of another (3) with malice. N.C. Gen. Stat. § 14-17 (Cum. Supp. 1998). For the purposes of this case, the difference between first-and second-degree murder is that first-degree murder requires proof of specific intent to kill formed after premeditation and deliberation. Therefore, a conviction of second-degree murder is both logically and factually possible where the defendant intended to kill, as long as that intent was not formed after premeditation and deliberation. *See State v. Misenheimer*, 304 N.C. 108, 282 S.E.2d 791 (1981); *State v. Poole*, 298 N.C. 254, 258 S.E.2d 339 (1979). This possibility results because, even in the absence of premeditation and deliberation, a defendant convicted of second-degree murder will still harbor malice. Our Supreme Court has held that the element of malice may be established by three different types of proof: (1) "express hatred, ill will or spite"; (2) commission of an inherently dangerous act (or omission to act when there is a legal duty to do so) in such a reckless and wanton manner "as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief"; or (3) a condition of mind that prompts a person to take the life of another intentionally, or to intentionally inflict serious bodily injury, which proximately results in death, without just cause, excuse, or justification. *State v. Reynolds*, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982). To support a conviction of second-degree murder, the State must prove that the defendant acted with any of these three types of malice. Therefore, there are second-degree murders in which the defendant intended to kill, and second-degree murders in which there was no specific intent to kill, but the defendant nevertheless acted with malice.

The elements of attempt are: " '(1) an intent by an individual to commit a crime; (2) an overt act committed by the individual calculated to bring about the crime; and (3) which falls short of the completed offense.' " *Lea*, 126 N.C. App. at 445, 485 S.E.2d at 877 (quoting *State v. Gunnings*, 122 N.C. App. 294, 296, 468 S.E.2d 613, 614 (1996)). Whether one can be guilty of attempted second-degree murder depends upon the defendant's state of mind. If the actor intends to kill the victim, but acts without premeditation and deliberation, the actor is guilty of attempted second-degree murder. Conversely, if the actor is aware that his or her conduct will certainly result in death (though in fact it does not), but the intent is not to kill, the actor cannot be guilty of attempted second-degree murder. Because intent to commit the underlying offense is a necessary element of attempt, it follows that there can be an attempt to commit those forms of

second-degree murder in which the malice element contains the intent to kill; conversely, if the type of malice does not entail an intent to kill, there may be no attempt. Therefore, compelled as we now are to confront the issue squarely, we conclude that attempted second-degree murder does exist as a crime in North Carolina.[1]

However, because this analysis also indicates that attempted second-degree murder exists only where a specific intent to kill is implicit in the underlying malice, it becomes incumbent upon the trial court to examine the underlying malice in every case where attempted second-degree murder is a possible verdict. If the court finds as a matter of law that the element of malice in the case involves a specific intent to kill, the court should instruct the jury on a possible verdict of attempted second-degree murder. On the other hand, if the underlying malice does not entail a specific in-

---

1. In reaching this result, we have surveyed other jurisdictions and have observed that a state's definition of the elements of second-degree murder frequently determines whether or not the offense of attempted second-degree murder exists. *See, e.g., Huitt v. State,* 678 P.2d 415 (Alaska App. 1984) (holding no offense of attempted second-degree murder where statute allows conviction without proof of intent to kill); *State v. Gray,* 654 So. 2d 552 (Fla. 1995) (holding second-degree murder is a general intent crime and, therefore, attempted second-degree murder exists); *Fenstermaker v. State,* 912 P.2d 653 (Idaho App. 1995) (holding offense of attempted second-degree murder exists where there is evidence defendant intended to kill); *People v. Lopez,* 655 N.E.2d 864 (Ill. 1995) (holding no offense of attempted second-degree murder where statutory definition of second-degree murder includes voluntary manslaughter); *State v. Shannon,* 905 P.2d 649 (Kan. 1995) (holding no offense of attempted second-degree murder where second-degree murder defined only as unintentional but reckless killing of another under circumstances manifesting indifference to human life); *State v. Guin,* 444 So. 2d 625 (La. App. 1983) (holding offense of attempted second-degree murder exists only where defendant has specific intent to kill); *State v. Huff,* 469 A.2d 1251 (Me. 1984) (holding defendant must act with specific intent to cause death of another in order to be convicted of attempted murder); *State v. Earp,* 571 A.2d 1227 (Md. App. 1990) (holding specific intent to kill indispensable element of attempted second-degree murder); *Ramos v. State,* 592 P.2d 950 (Nev. 1979) (holding no offense of attempted second-degree murder where that crime is defined as an unpremeditated depraved-heart offense); *State v. Lyerla,* 424 N.W.2d 908 (S.D. 1988) (holding no offense of attempted second-degree murder where state's definition of second-degree murder involves culpable mental state of recklessness but not intent), *appeal dismissed, cert. denied,* 488 U.S. 999, 102 L. Ed. 2d 767 (1989); *see also,* Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 59, at 428 (1st ed. 1972); Barbara Kritchevsky, *Criminal Attempt—Murder Two: The Law in Tennessee after* State v. Kimbrough, 28 U. Mem. L. Rev. 3 (Fall 1997). Although these cases are not authoritative for this Court, we are struck by the consistency with which other courts find the offense exists where, and only where, the defendant has intent to kill. North Carolina's expansive definition of malice as an element of second-degree murder requires this Court to hold that the offense of attempted second-degree murder exists here even though other states, with a more restrictive definition that does not include an intended killing, reach a different result.

tent to kill, attempted second-degree murder must not be submitted as a possible verdict.

In the case at bar, the jury was instructed:

[T]o find the defendant guilty of attempted second degree murder, the State must prove two things beyond a reasonable doubt. First, that the defendant Jerry Alfred Coble intended to commit second degree murder, that is, the defendant *intended to unlawfully kill a human being*, Gary Paul Williams, with malice, but without premeditation and deliberation.

Second, that at the time the defendant had this *intent*, he performed an act which was calculated to bring about second degree murder, but which fell short of the completed offense, and which came so close to bringing it about that in the ordinary and likely course of things, he would have completed that crime had he not been stopped or prevented from completing his apparent course of action.

(Emphasis added.) This instruction was adequate under the rule we enunciate today. This assignment of error is overruled.

## II.

[2] Next, defendant argues that even if such an offense exists in North Carolina, "the instruction was not warranted by the evidence in the case." The jury was instructed on both attempted first-degree murder and attempted second-degree murder. The evidence at trial was that the victim, Williams, approached defendant at his tractor-trailer truck and asked him what the problem was. Defendant responded by throwing a punch. Williams placed defendant in a headlock and the fight continued towards the side of the Texaco. While holding defendant in the headlock, Williams drove defendant's head into the side of the building, causing him to fall. As defendant lay on his back, Williams began hitting him in the face and told defendant that he "wasn't scared of him anymore." Defendant came after Williams again, tripped over a round plate in the parking lot, and grabbed Williams around the waist. Williams again placed defendant in a headlock. Defendant shoved Williams against the tailgate of defendant's pickup truck and stated, "If I get to my truck and get my gun, I'm going to kill you." Williams testified that defendant made that same threat three or four times. Defendant then yelled to his stepson to get his gun; the stepson refused. After defendant complained that he was choking and could not breathe, Williams released his hold on

defendant and pushed him away. The stepson yelled to Williams to run because defendant was going to get his gun. Williams ran into the Texaco and hid behind a freezer. Defendant approached the window of the Texaco. Witnesses heard gunshots and saw defendant shoot into Williams' car. The witnesses also overheard defendant say to Williams "I'm going to kill you," testified that defendant appeared to be "very, very mad," "looked like a madman," and was screaming that he would kill Williams.

This evidence supports an interpretation that defendant's response to finding himself on the losing end of a fight he initiated was violent rage. Our courts have long acknowledged that while only "legal provocation" can give rise to perfect or imperfect self defense, lesser forms of provocation exist that may negate premeditation and deliberation and thereby reduce first-degree murder to second-degree murder. *See State v. Watson*, 338 N.C. 168, 177, 449 S.E.2d 694, 700 (stating that "words or conduct . . . may be enough to arouse a sudden and sufficient passion in the perpetrator to negate deliberation and reduce a homicide to murder in the second degree"), *reconsideration and stay of mandate denied*, 338 N.C. 523, 457 S.E.2d 302 (1994), *and cert. denied*, 514 U.S. 1071, 131 L. Ed. 2d 569 (1995); *State v. Thomas*, 118 N.C. 1113, 24 S.E. 431 (1896). The evidence here was sufficient both to support an instruction on attempted second-degree murder and for the jury, deliberating the alternative verdicts, to conclude that defendant did have intent to kill but had not undertaken the premeditation and deliberation required for a conviction of attempted first-degree murder.

Defendant's assignments of error are overruled. Defendant's conviction is affirmed.

No error.

Judges WALKER and McGEE concur.