STATE OF NORTH CAROLIINA v. DAVID EARL BEST

No. 137

(Filed 28 January 1972)

**1. Criminal Law § 100; Solicitors— private prosecutor — role of solicitor**

    G.S. Ch. 7A, Article 9, did not change the role of the solicitor in a criminal case to that of an impartial officer of the court and does not prohibit the practice of employing private counsel to assist the solicitor.

**2. Criminal Law § 100— private prosecutor**

    In this rape prosecution, the trial court did not abuse its discretion in the denial of defendant's motion to prevent a private prosecutor employed by the prosecutrix from assisting the solicitor in prosecuting the case.

**3. Criminal Law § 99— voir dire — court's comment in excusing jury**

    Where the jury was excused so that the court could conduct a voir dire hearing, and, shortly after the jury returned, it became necessary to excuse the jury again for the same reason, the trial court's statement, "Ladies and Gentlemen, step into your room. I hate to bother you," was simply an apology for having to excuse the jury so soon after their return to the courtroom and did not tend to reflect an opinion that defendant's position was unsound and not worthy of the inconvenience being imposed upon the jury.

**4. Criminal Law § 89— prior consistent statements — corroboration**

    In this rape prosecution, the trial court properly admitted for corroborative purposes evidence of prior consistent statements made by the prosecutrix notwithstanding she had not been impeached on the stand.

**5. Criminal Law § 123— acceptance of verdict**

    The verdict is not complete until accepted by the court.

**6. Criminal Law § 124; Rape § 7— rape prosecution — sufficiency of jury's verdict**

The jury's verdict in this rape prosecution was sufficient where the foreman stated that "we make a recommendation that the defendant be found guilty as charged and recommend a life imprisonment," the clerk then asked, "Guilty of rape with recommendation that his punishment be life imprisonment; is that your verdict so say you all?" and all the jurors responded that this was their verdict.

APPEAL by defendant from *Hubbard, J.,* at the 24 May 1971 Criminal Session of CRAVEN Superior Court.

The bill of indictment, proper in form, charges defendant with the forcible rape of Dollie M. Sumrell on 7 February 1971, a violation of G.S. 14-21.

The State's evidence—defendant offered none—tends to show that the prosecutrix, Dollie M. Sumrell, and her husband were residents of Augusta, Georgia, but were visiting relatives in Craven County. On the night of 6 February 1971 the prosecutrix and her husband attended a late movie in New Bern, after which they returned to the home of the husband's parents. The prosecutrix and her husband had some argument and about 2 a.m. the prosecutrix left to go to her mother's house which was about one mile away. As she was walking along the road, a car containing four men stopped and one of the men got out and forced her to get inside. The car then drove to the New Bern Jaycee Park where the other men got out leaving the prosecutrix with the driver who raped her. Shortly thereafter the defendant returned. The prosecutrix tried to escape, jumped out of the car, and ran down the road. The defendant ran after her and knocked her down. The defendant then forced the prosecutrix to go with him to a nearby building where he raped her. While this was occurring, the other men left in the car. During the course of the night, defendant raped the prosecutrix three more times. About 6 a.m. defendant fell asleep. The prosecutrix ran to a nearby house and told one of the occupants, Katy Mae Garfield, what had happened. Katy Mae Garfield called the prosecutrix' husband and the police. The prosecutrix was then taken to the hospital and treated for torn ligaments and muscles. Defendant was identified by the prosecutrix from a group of photographs shown to her by the police. She later identified him at the preliminary hearing and at the trial.

Before the trial the prosecutrix employed Mr. Robert Bowers, an attorney, to assist the solicitor in prosecuting the action.

After the jury had been selected but before it was impaneled, defendant moved that Mr. Bowers not be allowed to appear as private prosecution in the case. The solicitor stated that he was prepared to try the case himself and that he did not know until the day before the trial that Mr. Bowers had been employed to assist. The solicitor further stated, however, that he consented to the appearance of Mr. Bowers as private prosecution. The court overruled the motion on the ground that it came too late.

At the trial the solicitor announced that he would not seek the death penalty but would seek a verdict of guilty of rape with recommendation of life imprisonment. Defendant entered a plea of not guilty, and the jury returned a verdict of guilty of rape with recommendation that punishment be life imprisonment. From judgment imposed in accordance with the verdict, defendant appealed.

*Attorney General Robert Morgan and Deputy Attorney General Andrew A. Vanore, Jr., for the State.*

*J. Troy Smith, Jr., for defendant appellant.*

MOORE, Justice.

Defendant first assigns as error the denial of his motion to prevent private counsel from appearing to aid the solicitor in prosecuting the case. Defendant concedes that the practice of allowing private prosecution is deeply rooted in North Carolina practice. However, he urges that with the enactment of Article 9 of Section 7A of the General Statutes, effective January 1, 1971, the role of the solicitor has changed from that of an advocate to an impartial officer of the court who is concerned with obtaining justice.

[1] G.S. 7A-61 provides that the solicitor shall prosecute in the name of the State all criminal actions requiring prosecution in the superior and district courts of his district and shall devote his full time to the duties of his office and shall not engage in the private practice of law. G.S. 7A-63 provides for the appointment of assistant solicitors on a full-time basis, and G.S. 7A-64 provides for temporary assistance to the solicitors when the dockets are overcrowded by the assignment of an assistant solicitor from another district, or by the temporary appointment of a qualified attorney to assist the solicitor. Article 9 of Section 7A of the General Statutes made the office of solicitor

a full-time job and spelled out the duties of that office. It also provided for permanent and temporary assistance for the solicitor in preparing and prosecuting cases. It did not, however, contrary to defendant's contention, change the role of the solicitor in criminal cases or prohibit the practice of employing private counsel to assist the solicitor.

This Court, in *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), recognized the practice of employing private counsel to assist in prosecuting criminal cases and stated the proper role of the solicitor or privately employed counsel as follows:

> "The prosecution of one charged with a criminal offense is an adversary proceeding. The prosecuting attorney, whether the *solicitor* or *privately employed counsel*, represents the State. It is not only his right, but his duty, to present the State's case and to argue for and to seek to obtain the State's objective in the proceeding. That objective is not conviction of the defendant regardless of guilt, not punishment disproportionate to the offense or contrary to the State's policy. It is the conviction of the guilty, the acquittal of the innocent and punishment of the guilty, appropriate to the circumstances, in the interest of the future protection of society. In the discharge of his duties the prosecuting attorney is not required to be, and should not be, neutral. He is not the judge, but the advocate of the State's interest in the matter at hand." (Emphasis added.)

The discretion vested in the trial judge to permit private counsel to appear with the solicitor has existed in our courts from their incipiency. *State v. Lippard*, 223 N.C. 167, 25 S.E. 2d 594 (1943); *State v. Carden*, 209 N.C. 404, 183 S.E. 898 (1936), cert. den. 298 U.S. 682, 80 L.Ed. 1402, 56 S.Ct. 960 (1936); *State v. Lea*, 203 N.C. 13, 164 S.E. 737 (1932). It should also be noted that when these three cases were decided, the solicitor was directed by the statute then in force "to prosecute on behalf of the State in all criminal actions in the superior courts." See N. C. Code of 1931 § 1431; N. C. Code of 1935 § 1431; N. C. Code of 1939 § 1431.

In *State v. Carden, supra,* Justice Clarkson quoted with approval from 22 R. C. L. (Prosecuting Attorneys), p. 93:

" ' . . . While under the present practice officers are appointed or elected for the express purpose of managing criminal business, the old practice survives in most jurisdictions to the extent that counsel employed by the complaining witness or by other persons desirous of a conviction are permitted to assist the prosecuting attorney in the conduct of the prosecution, and, as a general rule, no valid objection can be raised by the accused to allow the prosecuting attorney to have the assistance of private members of the bar. . . . (p. 94) It is within the discretion of the trial court to allow special counsel to aid the prosecuting attorney in the prosecution of a case, and such discretion will be interfered with only on a showing of abuse thereof. . . . In all such cases it is within the discretion of the court to appoint competent counsel to assist, or to permit counsel employed by private parties, or even volunteers, to appear for that purpose.' "

[2] In the present case, the solicitor consented to the employment of private counsel. The solicitor continued in charge of the prosecution. He announced in open court that he would seek a conviction of rape but that he would not ask for the death penalty, and the solicitor examined all the State's witnesses with the exception of one. Under these circumstances, the appearance of private counsel for the prosecution was a matter under the control and in the sound discretion of the presiding judge. No abuse of discretion appears, and this assignment is overruled.

[3] At the beginning of the trial the court excused the jury to conduct a *voir dire*. Shortly after the jury returned, the jury was again excused for a similar reason. At that time the judge stated: "Ladies and Gentlemen, step into your room. I hate to bother you." Defendant contends that this comment by the judge tends to reflect an opinion of the judge that the defendant's position was unsound and not actually worthy of the inconvenience being imposed upon the jury by the necessity of having to leave the courtroom.

The duty of absolute impartiality is imposed on the trial judge by G.S. 1-180. *Galloway v. Lawrence*, 266 N.C. 245, 145 S.E. 2d 861 (1966).

In *State v. Carter*, 233 N.C. 581, 65 S.E. 2d 9 (1951), it is stated:

"Every person charged with crime has an absolute right to a fair trial. By this it is meant that he is entilted to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . .

\*　　\*　　\*

"The trial judge occupies an exalted station. Jurors entertain great respect for his opinion, and are easily influenced by any suggestion coming from him. As a consequence, he must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury. . . .

"The bare possibility, however, that an accused may have suffered prejudice from the conduct or language of the judge is not sufficient to overthrow an adverse verdict. . . . The criterion for determining whether or not the trial judge deprived an accused of his right to a fair trial by improper comments or remarks in the hearing of the jury is the probable effect of the language upon the jury. . . . In applying this test, the utterance of the judge is to be considered *in the light of the circumstances under which it was made*. This is so because 'a word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.' *Towne v. Eisner*, 245 U.S. 418, 38 S.Ct. 158, 62 L.Ed. 372." (Emphasis added.)

*Accord, State v. Holden*, 280 N.C. 426, 185 S.E. 2d 889 (1972) ; *State v. Hoover*, 252 N.C. 133, 113 S.E. 2d 281 (1960) ; *State v. Perry*, 231 N.C. 467, 57 S.E. 2d 774 (1950).

Considering the remark of the judge "in the light of the circumstances under which it was made," it is apparent that the trial court was simply apologizing to the jury for having to excuse them again so soon after their return to the courtroom. To hold otherwise would be to misconstrue a courteous statement made by the trial court to the jury. This assignment is without merit.

[4] Defendant next contends the court erred when it allowed the State to introduce evidence of prior consistent statements made by the prosecutrix when she had not been impeached on the stand. Evidence of this character was competent as cor-

roborative evidence, and the trial court was careful to limit it to that purpose. *State v. Rose,* 270 N.C. 406, 154 S.E. 2d 492 (1967), and cases cited; Stansbury, N. C. Evidence §§ 50 and 52 (2d Ed. 1963). This assignment is overruled.

**[5, 6]** Finally, the defendant contends that the verdict rendered by the jury failed to find the facts or disclose the intention of the jury on the issue of guilt of defendant and is therefore insufficient as a matter of law.

The following exchange took place after the jury agreed that they had reached a verdict:

"MRS. MCLAWHORN: (Clerk) Raise your right hand. David Earl Best, members of the jury, look upon the prisoner. What say you, is he guilty of rape with recommendation that his punishment be life imprisonment or not guilty?

"MR. SALEEBY: Your Honor, we make a recommendation that the defendant be found guilty as charged and recommend life imprisonment.

"MRS. MCLAWHORN: Guilty of rape with recommendation that his punishment be life imprisonment; is that your verdict so say you all?

"JURORS: Yes."

The verdict is not complete until accepted by the court. *State v. Sumner,* 269 N.C. 555, 153 S.E. 2d 111 (1967); 3 Strong, N. C. Index 2d, Criminal Law § 124. It is the practice in North Carolina that before the court accepts and records the verdict of the jury, the clerk repeats to the jury its verdict as understood by the court. "When the verdict has been received from the foreman and entered, it is the duty of the clerk to cause the jury to hearken to their verdict as the court has it recorded, and to read it to them and say: 'So say you all?' At this time any juror can retract on the ground of conscientious scruples, mistake, fraud, or otherwise, and his dissent would then be effectual." *State v. Young,* 77 N.C. 498 (1877). See also *State v. Webb,* 265 N.C. 546, 144 S.E. 2d 619 (1965). Here, the clerk of the court repeated to the jurors the verdict of the jury as understood by the court. That verdict was "Guilty of rape with recommendation that his punishment be life imprisonment." All the jurors responded that this was their verdict.

There was no possibility that there was any mistake in this verdict. Had there been any doubt, the defendant had the right to have the jury polled. *State v. Cephus,* 241 N.C. 562, 86 S.E. 2d 70 (1955). This assignment is overruled.

A careful consideration of the entire record discloses no prejudicial error.

No error.