STATE OF NORTH CAROLINA v. ALBERT RHODES

No. 7530SC730

(Filed 4 February 1976)

**Criminal Law § 99; Constitutional Law § 32— warning to witness about perjury — absence of jury — no expression of opinion — no deprivation of effective assistance of counsel**

> The trial court in an incest case did not express an opinion in violation of G.S. 1-180 when he told a witness out of the jury's presence that he would not tolerate perjury and admonished her to tell the truth; nor did such action by the court deprive defendant of the effective representation of counsel by coercing defense counsel into failing to pursue a line of questioning of the witness, the wife of defendant and mother of the prosecutrix, to show that she had falsely accused defendant since it is clear that any decision of counsel not to examine the witness further was a matter of trial tactics and not the result of coercion by the court.

> Judge BRITT dissenting.

APPEAL by defendant from *Wood, Judge.* Judgment entered 25 April 1975 in Superior Court, HAYWOOD County. Heard in the Court of Appeals 15 January 1976.

Defendant was charged with the crime of incest; to wit: carnal knowledge with his 12-year-old stepdaughter. From a plea of not guilty, the jury returned a verdict of guilty. From judgment sentencing him to a term of imprisonment, defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney General James L. Blackburn, for the State.*

*Swain and Leake, by Robert S. Swain and Joel B. Stevenson, for defendant appellant.*

MORRIS, Judge.

The only question argued by defendant in his brief and before the court is his contention that the trial court, by admonishing a witness out of the jury's presence to tell the truth, rendered an opinion in violation of G.S. 1-180, prejudiced the defendant's case, prevented that witness from pursuing that particular aspect of her testimony, discouraged defendant's counsel from pursuing that particular line of testimony because of fear of suborning perjury, and ultimately undercut defend-

ant's effective confrontation and cross-examination of the witness. This contention is without merit.

Under the guidelines of G.S. 1-180, "[t]he duty of absolute impartiality is imposed on the trial judge. . . ." *State v. Best,* 280 N.C. 413, 417, 186 S.E. 2d 1 (1972). This broadly stated rule of law in North Carolina reflects a long-standing concern that " 'every person charged with crime has an absolute right to a fair trial. By this it is meant that he is entitled to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. . . .' " (Citation omitted.) *Id.,* at 418.

Therefore, legislative concern, as stated in G.S. 1-180, recognizes the uniquely interdependent respect that the trial court holds for the jury and vice versa. " 'The trial judge occupies an exalted station. Jurors entertain great respect for his opinion, and are easily influenced by any suggestion coming from him. As a consequence, he must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury. . . .' " (Citation omitted.) *Id.,* at 418. Yet, when an objectionable opinion statement purportedly has been made and possibly violates G.S. 1-180, that remark, standing by itself, may not necessarily constitute reversible error. To establish reversible error, courts must consider the remark " '. . . *in the light of the circumstances under which it was made.*' " (Citations omitted.) *Id.,* at 418.

In this case, the judge before warning the witness that he would not tolerate perjury sent the jury from the courtroom. The jury heard nothing, and when they went home that evening during the recess from their deliberation on the verdict, they were warned firmly to avoid any discussion of the case with anyone. Thus, we must assume, barring evidence to the contrary, of which we have none, that the jury followed this warning and heard none of the trial court's remarks to the witness. Where the jury has heard nothing with respect to a trial judge's comments and opinions, then G.S. 1-180 is simply inapplicable. *State v. Garrett* and *State v. Brank,* 5 N.C. App. 367, 168 S.E. 2d 479 (1969), cert. denied 276 N.C. 85 (1970). Also see *State v. Rush,* 13 N.C. App. 539, 186 S.E. 2d 595 (1972); *State v. Butcher,* 10 N.C. App. 93, 177 S.E. 2d 924 (1970).

When a trial court presides over the cases on its docket it remains duty bound ". . . to supervise and control the course

of a trial so as to insure justice for all parties . . . [and this includes the responsibility] to control the examination and cross-examination of witnesses." *State v. Greene*, 285 N.C. 482, 489, 206 S.E. 2d 229 (1974). We believe this trial court met all of its requisite responsibilities to be both impartial in the eyes of the jurors and to control the overall course of the trial then in process.

Nor do we agree that the court's actions resulted in defendant's not having effective representation. Counsel for defendant contends that because of the court's warning to the witness with respect to perjury, he did not examine her further in the presence of the jury. The witness, defendant's wife, and the mother of the prosecuting witness, had testified that she did not remember making a statement to the officers with respect to the alleged incidents of incest which, she said in her statement, took place in her presence. She admitted that the signature on the statement was hers but testified she did not remember signing it. She also testified she remembered nothing on that date until about four o'clock, at which time she did recall "coming to myself" in the Sheriff's Department. The court allowed the State to examine her as a hostile witness, and she testified that she had been treated at at least two hospitals for temporary amnesia. On cross-examination, defendant's counsel questioned her with respect to whether she had been in any hospitals. When he attempted to examine her with respect to her mental condition, the court sustained the State's objection and advised counsel that if he planned to have medical testimony about that, he would allow her to testify. Counsel stated that he had not then made that decision. She testified that she came to the Sheriff's office "on January 22, 1974, with Charlie Messer and Rev. Ridley," and that she was there all day but had no recollection of any statement purported to be made by her. She was allowed to testify that the reason she did not remember was that she had taken a double dose of medication because her daughter had upset her. At that point the court excused the jury and told the witness that he was not "impressed with her truthfulness," that in keeping with the duty "to get the truth" he felt that he needed to warn her. He further said: "I just want to let you know that you are treading on very dangerous ground here. And all I'm asking you to do is to tell the truth, Mrs. Rhodes, whatever the truth is." The witness responded: "All right. I'll just tell the truth. My husband did not do any of it. He's not that type of man. . . ."

After questioning the witness further about whether she was threatened with indictment by the Sheriff, the court said: "All right, I'm going to allow the State to continue to cross-examine her. I think that the jury will determine what the truth is. I still want you to keep in mind that you are treading upon perjury here in your testimony. All I want is the truth. What the court seeks is the truth. I don't want this man convicted of false testimony. Nor do I want this tragedy to happen."

The jury was brought back in and counsel for the defendant stated he had no further questions. The State continued its cross-examination and the witness again testified that she did not remember making a statement. Defendant now contends that the court prevented the witness from testifying to the falsity of her accusation against the defendant and also coerced defense counsel into failing to pursue that line of questioning. It seems clear that any decision of counsel not to examine the witness further was a matter of trial tactics and not the result of coercion from the court. Nor can it be said that the court prevented the witness from testifying that the accusations against defendant were false. The court merely admonished the witness to tell the truth, "whatever the truth is." Defendant's contentions are without merit.

No error.

Chief Judge BROCK concurs.

Judge BRITT dissents.

Judge BRITT dissenting.

`I agree with the majority that the trial judge did not violate the provisions of G.S. 1-180 as that statute relates to the expression of an opinion before the jury. That was not the case here. I do think, however, that the able trial judge went too far in his warnings and admonitions to the witness Marie Rhodes, and that his statements to her in the absence of the jury were coercive.

The record reveals that after three witnesses had testified for the State, the district attorney requested a voir dire in the absence of the jury to have the court declare Marie Rhodes a hostile witness. At that time she was examined and cross-ex-

amined at length with respect to the testimony which she proposed to give at trial and its conflict with written statements she signed soon after the occurrence of the alleged offense. Following the voir dire, the court declared Marie Rhodes a hostile witness and permitted the State to call her as a witness and cross-examine her with respect to the written statements.

The jury was returned to the courtroom and the witness was questioned by the district attorney. Soon after defendant's counsel began his cross-examination, the trial judge, on his own motion, excused the jury again. At that time, His Honor not only told the witness several times that she was "treading on dangerous ground" and that the court was "not going to tolerate any perjury in this case," but pointed out what he considered were defects and inconsistencies in her testimony.

Assuming, *arguendo*, that it is permissible for the trial judge to warn a witness with respect to perjury, there should be no coercion. While the offense with which defendant is charged is sordid and shocking, he is entitled to have the *jury* weigh the evidence, separate the true from the false, and arrive at a just verdict. Should any witness commit perjury during the trial, indictment and prosecution of the witness for perjury would be appropriate.

My vote is for a new trial.