IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-87

No. 461A20

Filed 13 August 2021

STATE OF NORTH CAROLINA

v.

JOHN FITZGERALD AUSTIN

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 273 N.C. App. 565, 849 S.E.2d 307 (2020), finding no error after appeal from a judgment entered on 8 May 2019 by Judge Todd Burke in Superior Court, Forsyth County. Heard in the Supreme Court on 17 May 2021.

*Joshua H. Stein, Attorney General, by Chris D. Agosto Carreiro, Assistant Attorney General, for the State-appellee.*

*Jarvis John Edgerton, IV for defendant-appellant.*

BERGER, Justice.

¶ 1 On May 8, 2019, a Forsyth County jury found defendant John Fitzgerald Austin guilty of assault on a female and habitual misdemeanor assault. That same day, defendant pleaded guilty to attaining habitual felon status, and he was sentenced to 103 to 136 months in prison. Defendant appealed, arguing that the trial court impermissibly expressed an opinion during jury instructions concerning facts to be decided by the jury. A divided panel of the Court of Appeals upheld defendant's conviction. *State v. Austin*, 273 N.C. App. 565, 849 S.E.2d 307 (2020). Defendant

appeals to this Court pursuant to N.C.G.S. § 7A-30(2).

## I. Factual and Procedural Background

On January 6, 2018, Claudette Little and Scheherazade Bonner went to a Winston-Salem night club. Shortly after they arrived, Little received a phone call from defendant. Little and defendant were in a dating relationship at the time. Little testified that defendant called her because defendant did not believe her about her location.

Approximately thirty minutes later, defendant arrived at the night club with David Harris. Defendant asked Little to leave with him, but Little refused. Defendant left the night club around 1:30 a.m. on January 7, 2018. Little later left the night club with Bonner and Willis Williams and returned home. Defendant was not at the home when they arrived. Both Bonner and Williams subsequently left Little's residence, and Little went to sleep.

Little was then awakened by defendant standing over her and yelling at her. Defendant assaulted Little multiple times, demanded that Little take off her clothes, and ordered her to perform oral sex on him. When defendant went to sleep, Little put on her clothes and ran out of the apartment. Little made contact with her daughter by phone and met her daughter on the side of the road. Little's daughter testified that her mother was not properly dressed for a cold January morning.

That same day, Little and her daughter went to the magistrate's office and

sought a warrant against defendant for assault on a female. Defendant was subsequently indicted for assault on a female, habitual misdemeanor assault, and attaining habitual felon status.

¶ 6     On May 6, 2019, defendant's matter came on for trial. Following the presentation of the evidence, the trial court instructed the jury on the charges of assault on a female and habitual misdemeanor assault. During the initial instruction on the charge of assault on a female, the trial court stated, in part:

> For you to find the defendant guilty of this offense, the State must prove three [things] beyond a reasonable doubt:
>
> First, that the defendant intentionally assaulted the alleged victim. It has been described in this case by the prosecuting witness that the defendant hit her upon her head, that he hit her on her arms, about her body.
>
> You are the finders of fact. You will determine what the assault was, ladies and gentlemen. The Court is not telling you what it is, I'm just giving you a description. And there was also testimony by the witness that the defendant asked her to perform, by force, another act, which could be considered an assault. But you will determine what the assault was. I'm not telling you what it is. And if what I'm saying is the evidence and your recollection is different from what I say, you still should rely upon your recollection of the evidence, as to what the assault is that has been testified to in this case.

¶ 7     The next day, following a request from the jury, the trial court reinstructed the jury on the charge of assault on a female:

> You requested specifically the substantive instructions for assault on a female and habitual misdemeanor[ ] assault.

> Ladies and gentlemen, I will define, again, first. An assault does not necessarily have to involve contact, it could be putting someone in fear or imminent apprehension of contact, threatening contact. . . . In this case the particular assault has been described as hitting the prosecuting witness, Ms. Claudette Little, about her body multiple times. Yesterday I mentioned some other act based upon the testimony at the trial, that she stated that she was forced to perform. But for purposes of this trial, you do not have to consider that, just that it is alleged that she was hit about her body multiple times. Whether that—whatever part of the body that may be, head, face, torso, arms, legs, that will be for you to determine as you are the finders of fact.

¶ 8        Defendant did not object to any of the trial court's jury instructions at trial. Defendant was found guilty of assault on a female and habitual misdemeanor assault, and he pleaded guilty to attaining habitual felon status.

¶ 9        In the Court of Appeals, defendant argued that the trial court had improperly expressed its opinion during jury instructions that an assault had occurred. *Austin*, 273 N.C. App. at 568, 849 S.E.2d at 310. The Court of Appeals found no error and upheld defendant's conviction. *Id.* at 575, 849 S.E.2d at 314. Based on a dissenting opinion, defendant appealed to this Court, arguing that the trial court's comments were improper expressions of opinion which prejudiced defendant. We disagree.

## II. Standard of Review

¶ 10        Initially, we note that both parties failed to cite the proper standard of review in their briefs. Defendant contends that we should utilize a de novo standard of review, relying on a Court of Appeals' opinion in *Staton v. Brame*, 136 N.C. App. 170,

523 S.E.2d 424 (1999), a civil case that bears no relation to the issues in this case. The State argues that the appropriate standard of review is plain error. However, plain error review is available under Rule 10(a)(4) only when a defendant specifically argues plain error for an unpreserved instructional or evidentiary error. N.C. R. App. P. 10(a)(4); *see generally State v. Lawrence*, 365 N.C. 506, 723 S.E.2d 326 (2012).

¶ 11        Rule 10 of the North Carolina Rules of Appellate Procedure provides, in part:

> In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion. Any such issue that was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted *or which by rule or law was deemed preserved* or taken without any such action, including, but not limited to, whether the judgment is supported by the verdict or by the findings of fact and conclusions of law, whether the court had jurisdiction over the subject matter, and whether a criminal charge is sufficient in law, may be made the basis of an issue presented on appeal.

N.C. R. App. P. 10(a)(1) (emphasis added).

¶ 12        Thus, pursuant to Rule 10(a)(1), an alleged error may only be preserved by either a party's timely objection or by operation of rule or law. Rule 10 "generally require[s] that parties take some action to preserve an issue for appeal." *State v. Meadows*, 371 N.C. 742, 746, 821 S.E.2d 402, 405 (2018) (citing N.C. R. App. P. 10(a)(1)). However, when a party fails to note a timely objection to an alleged error,

yet later raises the issue on appeal, we must determine whether the alleged error is deemed preserved by operation of rule or law. *See* N.C. R. App. P. 10(a)(1).

¶ 13    A statute will automatically preserve an issue for appellate review if the statute "either: (1) requires a specific act by a trial judge; or (2) leaves no doubt that the legislature intended to place the responsibility on the judge presiding at the trial[.]" *In re E.D.*, 372 N.C. 111, 121, 827 S.E.2d 450, 457 (2019) (cleaned up).

¶ 14    Section 15A-1222 and Section 15A-1232 of the General Statutes of North Carolina specifically prohibit a trial court judge from expressing an opinion during trial and when instructing the jury. Accordingly, "[w]henever a defendant alleges a trial court made an improper statement by expressing an opinion on the evidence in violation of N.C.G.S. §§ 15A-1222 and 15A-1232, the error is preserved for review without objection due to the mandatory nature of these statutory prohibitions." *State v. Duke*, 360 N.C. 110, 123, 623 S.E.2d 11, 20 (2005) (citation omitted).

¶ 15    When an alleged statutory violation by the trial court is properly preserved, either by timely objection or, as in this case, by operation of rule or law, we review for prejudicial error pursuant to N.C.G.S. § 15A-1443(a). *See Lawrence*, 365 N.C. at 512, 723 S.E.2d at 330 (citing N.C.G.S. § 15A-1443(a) and stating that "if the [preserved] error relates to a right not arising under the United States Constitution, . . . review requires the defendant to bear the burden of showing prejudice.").

¶ 16    N.C.G.S. § 15A-1443(a) provides,

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C.G.S. § 15A-1443(a) (2019).[1]

When reviewing alleged improper expressions of judicial opinion under this standard, we utilize a totality of the circumstances test to determine whether the trial court's "comments cross[ed] into the realm of impermissible opinion." *State v. Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995). Pursuant to N.C.G.S. § 15A-1443(a), a defendant must also show that the comments had such a prejudicial effect that there is a reasonable possibility of a different result absent the error.[2] *See,*

---

[1] While the right to a fair trial does implicate constitutional concerns, defendant's argument is based upon statutory violations of N.C.G.S. §§ 15A-1222 and 15A-1232. Therefore N.C.G.S. § 15A-1443(a) applies and not N.C.G.S. § 15A-1443(b).

[2] We have applied the prejudicial error standard set forth in N.C.G.S. § 15A-1443(a) in a variety of cases and have consistently held that judicial error does not automatically warrant a new trial unless the defendant shows the error was prejudicial by demonstrating a reasonable possibility that, absent the error, a different result would have been reached. *See State v. Corey*, 373 N.C. 225, 237, 835 S.E.2d 830, 838 (2019) (holding that trial court's failure to comply with N.C.G.S. § 15A-1231(b) before submitting the issue of whether an aggravating factor existed in the case was not materially prejudicial under N.C.G.S. § 15A-1443(a)); *State v. Mumma*, 372 N.C. 226, 242, 827 S.E.2d 288, 298–99 (2019) (holding that trial court's error in allowing the jury to review graphic photographs of the murder victim over the defendant's objection was not prejudicial error under N.C.G.S. § 15A-1443(a)); *State v. Malachi*, 371 N.C. 719, 821 S.E.2d 407 (2018) (holding that trial court's error in instructing the jury that it could find the defendant guilty of possession of a firearm based on constructive possession did not prejudice the defendant under N.C.G.S. § 15A-1443(a)); *State v. Starr*, 365 N.C. 314, 319, 718 S.E.2d 362, 366 (2011) (holding that the trial court's denial of the jury's request to review trial transcript did not prejudice the defendant under N.C.G.S. § 15A-1443(a)).

*e.g., Larrimore*, 340 N.C. at 155, 456 S.E.2d at 808; *State v. Anthony*, 354 N.C. 372, 402, 555 S.E.2d 557, 578 (2001); *State v. Berry*, 235 N.C. App. 496, 508, 761 S.E.2d 700, 708 (2014), *rev'd per curiam*, 368 N.C. 90, 773 S.E.2d 54 (2015).

### III.    Analysis

On appeal, defendant argues that the trial court violated N.C.G.S. §§ 15A-1222 and 15A-1232 by improperly expressing its opinion during jury instructions and that this violation requires a new trial.  Section 15A-1222 states, "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury."  N.C.G.S. § 15A-1222 (2019).  Section 15A-1232 states, "[i]n instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence."  N.C.G.S. § 15A-1232 (2019).  Accordingly, when read together, the plain language of the statues makes it improper for a trial judge to insert his opinion into any portion of the trial, including jury instructions.

Moreover, N.C.G.S. §§ 15A-1222 and 15A-1232 also impose "[t]he duty of absolute impartiality . . . on the trial judge."  *State v. Best*, 280 N.C. 413, 417, 186 S.E.2d 1, 4 (1972) (citing N.C.G.S. § 1-180 (repealed in 1977 and superseded by N.C.G.S. §§ 15A-1222 and 15A-1232)); *see State v. Hewett*, 295 N.C. 640, 643–44, 247 S.E.2d 886, 888 (1978) (recognizing the implicit embodiment of N.C.G.S. § 1-180 in

N.C.G.S. §§ 15A-1222 and 15A-1232). However, while this duty prohibits any expression of judicial opinion at trial, not every "impropriety by the trial judge . . . result[s] in prejudicial error." *State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985).

¶ 20     "A remark by the court is not grounds for a new trial if, when considered in the light of the circumstances under which it was made, it could not have prejudiced defendant's case." *State v. King*, 311 N.C. 603, 618, 320 S.E.2d 1, 11 (1984). "[A]n alleged improper statement will not be reviewed in isolation, but will be considered in light of the circumstances in which it was made." *State v. Jones*, 358 N.C. 330, 355, 595 S.E.2d 124, 140 (2004) (quoting *State v. Weeks,* 322 N.C. 152, 158, 367 S.E.2d 895, 899 (1988)). "The bare possibility . . . that an accused may have suffered prejudice from the conduct or language of the judge is not sufficient to overthrow an adverse verdict." *State v. Carter*, 233 N.C. 581, 583, 65 S.E.2d 9, 10–11 (1951) (citing *State v. Jones*, 67 N.C. 285 (1872)).

¶ 21     Here, during the trial court's initial instruction to the jury for the assault on a female charge, the trial court stated:

> You are the finders of fact. You will determine what the assault was, ladies and gentlemen. The Court is not telling you what it is, I'm just giving you a description. . . . But you will determine what the assault was. I'm not telling you what it is. And if what I'm saying is the evidence and your recollection is different from what I say, you still should rely upon your recollection of the evidence, as to what the assault is that has been testified to in this case.

¶ 22    The trial court subsequently also instructed the jury:

> The law requires the presiding judge to be impartial.
> You should not infer from anything I have done or said that
> the evidence is to be believed or disbelieved, that a fact has
> been proved or what your findings ought to be. It is your
> duty to find the facts and to render a verdict reflecting the
> truth.

¶ 23    After a request by the jury, the trial court provided the following instruction:

> Ladies and gentlemen, I will define, again, first. An
> assault does not necessarily have to involve contact, it
> could be putting someone in fear or imminent
> apprehension of contact, threatening contact. But the facts
> of this case have demonstrated that the—there was actual
> contact, that's a touching of some form that is
> nonconsensual and unwanted by the other party. In this
> case the particular assault has been described as hitting
> the prosecuting witness, Ms. Claudette Little, about her
> body multiple times. . . . But for purposes of this trial, you
> do not have to consider that, just that it is alleged that she
> was hit about her body multiple times. Whether that—
> whatever part of the body that may be, head, face, torso,
> arms, legs, that will be for you to determine as you are the
> finders of fact.

¶ 24    Further, the trial court again instructed on the charge of assault on a female

at the jury's request.  During this instruction, the trial court stated the following:

> And just for you—I already told you this, no matter what I
> said, it's for you to determine what happened, not me. The
> facts are not what the attorneys say. The facts are not what
> I say. You determine what happened in this case. I'm just
> merely describing what has been alleged, and that is that
> the defendant is accused of hitting the prosecuting witness
> about her body multiple times.

¶ 25    Even if we assume the trial court violated the statutory prohibitions against

the expression of opinion, defendant cannot show a reasonable possibility of a different result.

Here, for the charge of assault on a female, the State was required to prove that (1) defendant intentionally assaulted Little, (2) Little was a female person, and (3) defendant was a male person at least eighteen years of age. N.C.G.S. § 14-33(c)(2) (2019). Little testified in detail at trial concerning defendant's criminal conduct. Little testified that defendant wrapped a belt around his hand and struck her several times in her head, face, and arm. The State entered into evidence photographs which showed numerous bruises to Little's face and arm. In addition, the State also presented evidence through the testimony of other witnesses which corroborated Little's testimony. Specifically, testimony from Bonner and Little's daughter corroborated Little's timeline of events leading up to and following the assault.

The State presented evidence at trial which satisfied the elements of the predicate assault, and the trial court's instruction made clear that the jury alone was responsible for making this determination. After reviewing the totality of the circumstances including the instructions provided by the trial court and the evidence presented at trial, we conclude that defendant received a fair trial free from prejudicial error, and the decision of the Court of Appeals is affirmed.

AFFIRMED.

Justice EARLS dissenting.

When the presiding judge speaks during a trial, we presume the jury listens. As the most visible representative of our legal system, "[t]he trial judge occupies an exalted station." *State v. Carter*, 233 N.C. 581, 583 (1951). To eliminate the risk that a jury will convict (or fail to convict) a defendant based upon its perception of the judge's opinion of what the evidence proves (or does not prove)—rather than the jury's own examination of the evidence presented by the parties—North Carolina law prohibits a trial judge from "express[ing] during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C.G.S. § 15A-1222 (2019); *see also* N.C.G.S. § 15A-1232 (2019) ("In instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved . . . ."). The majority in this case fails to give proper weight to this statutory mandate by refusing to engage meaningfully in a prejudice analysis and instead ignoring any impact the judge's instructions had on the jury.

The defendant here, John Fitzgerald Austin, did not object to the trial judge's improper expressions of opinion at the time they were communicated to the jury. However, as the majority correctly explains, Austin's claim that the trial judge impermissibly expressed an opinion in violation of N.C.G.S. §§ 15A-1222 and 15A-1232 is preserved by operation of law. Where I depart from the majority is in its treatment of the merits of Austin's claim. I would hold that the trial judge violated N.C.G.S. §§ 15A-1222 and 15A-1232 by impermissibly communicating to the jury his

opinion regarding the events underlying Austin's conviction and that Austin was prejudiced thereby.

¶ 30      The majority assumes without deciding that the trial judge "violated the statutory prohibitions against the expression of opinion."[1] However, we should have no difficulty concluding from the transcript of the trial in this case that the trial judge erred in phrasing instructions to the jury which presupposed the veracity of the complaining witness's allegation that Austin assaulted her, a fact necessary to support Austin's conviction for the offense of assault on a female. Recognizing the seriousness of the error is an important part of assessing whether the error was prejudicial.

¶ 31      The trial judge improperly communicated his opinion that this alleged fact had been proven on no less than three occasions. Moreover, these were not statements made in passing, but rather all were made during jury instructions when the jury's focus was exclusively on the trial judge. First, the trial judge informed the jury that

---

[1] In a recent article, one scholar argued that the practice of disposing of cases by finding no prejudice, without examining the merits of a criminal defendant's underlying claim that his or her procedural rights were violated, both "seriously diminishes the incentives of trial judges, prosecutors, and relevant organizational and systemic entities to abide by procedural law" and "stymies the vital process of norm clarification." Justin Murray, *Policing Procedural Errors in the Lower Criminal Courts*, 89 Fordham L. Rev. 1411, 1430 (2021). Although I do not doubt that all actors in our judicial system are doing their level best to rigorously adhere to all procedural requirements intended to ensure that criminal defendants are treated fairly, I share Professor Murray's concern that too frequently disposing of cases in this manner leaves these actors—and criminal defendants—bereft of important guidance regarding the scope of the procedural rights afforded to defendants by the people of North Carolina through our Constitution and statutes.

its task was to "determine *what the assault was*, ladies and gentlemen." (Emphasis added.) Second, the trial judge explained to the jury that "*the facts of this case have demonstrated that the—there was actual contact*, that's a touching of some form that is nonconsensual and unwanted by the other party." (Emphasis added.) Third, the trial judge instructed the jury that "it is alleged that [the complaining witness] was hit about her body multiple times. Whether that—*whatever part of the body that may be*, head, face, torso, arms, legs, that will be for you to determine as you are the finders of fact." (Emphasis added.) Each of these statements presumes Austin actually assaulted the complaining witness. And because the only three facts necessary to sustain a conviction under N.C.G.S. § 14-33(c)(2) are (1) that the victim was female, (2) that the perpetrator was a male person at least 18 years of age, and (3) that the male perpetrator assaulted the female victim, N.C.G.S. § 14-33(c)(2) (2019), these statements effectively communicated the trial judge's opinion that Austin was guilty as charged.

¶ 32      Whether Austin actually assaulted the complaining witness as that witness alleged was a question for the jury to decide on the basis of the evidence presented at trial. An appropriate instruction would have informed the jury of its obligation to determine *if* Austin had assaulted the complaining witness. Instead, the trial judge's comments communicated that there was no disputing that Austin had committed an assault and, by extension, that there was no other verdict the jury could reach but to

find Austin guilty. Even if the State's evidence was uncontroverted, it was still for the jury to decide if the State had proven beyond a reasonable doubt that Austin violated N.C.G.S. § 14-33(c)(2), not the trial judge.

¶ 33        In addition to arguing that the trial judge's statements were not improper, the State also contends that even if they were, any improper expression of judicial opinion was "cured" by the delivery of instructions properly charging the jury with deciding Austin's guilt or innocence. The majority concludes that any allegedly improper expression of opinion could not be prejudicial in part because "the trial court's instruction made clear that the jury alone was responsible for making th[e] determination" of Austin's guilt. However, a boilerplate recitation of the jury's ultimate responsibility to decide which facts have been proven does not erase the prejudicial effect of the trial judge repeatedly instructing the jury that an assault has occurred, a key fact in this case. The question of whether a trial judge has properly instructed the jury on the jury's role as the factfinder in a criminal trial is distinct from the question of whether the trial judge has improperly weighed in by communicating his or her view of what the facts are. Even if the jury knows it is its responsibility alone to find the facts, the risk is that it will discharge this responsibility improperly influenced by the understanding that the trial judge believes the defendant is guilty.

¶ 34        The majority does not cite any case law in its cursory analysis of the trial

judge's allegedly improper expressions of opinion. Our precedents make clear that the trial judge's statements in this case violated N.C.G.S. §§ 15A-1222 and 15A-1232. In the cases where we have rejected a defendant's claim that a trial judge violated N.C.G.S. §§ 15A-1222 and 15A-1232, we have held that the trial judge's comments could not be understood as expressions of opinion when read in context. We examined the totality of the circumstances and concluded the trial judge did not improperly express an opinion. We did not conclude an error was not prejudicial merely because "the State presented evidence at trial which satisfied the elements of the predicate assault, and the trial court's instruction made clear that the jury alone was responsible for making this determination."

For example, in *Young*, the trial judge instructed the jury that "[t]here is evidence in this case which tends to show that the defendant confessed that he committed the crime charged in this case." 324 N.C. at 494. The defendant claimed that the trial judge's "instructions concerning evidence 'tending to show' that he had 'confessed' to the crime charged, together with its subsequent statement that he was accused of first degree murder, amounted to an expression of opinion on the evidence in violation of the statutes." *Id.* at 495. We disagreed, explaining that "[t]he use of the words 'tending to show' or 'tends to show' in reviewing the evidence does not constitute an expression of the trial court's opinion on the evidence." *Id.* We also explained that the use of the term "confessed" "did not amount to an expression of

opinion by the trial court that the defendant in fact had confessed." *Id.* at 498. Instead, we reasoned that the portions of the jury instructions the defendant challenged, when read in context, were not improper expressions of opinion because they "made it clear that, although there was evidence tending to show that the defendant had confessed, the trial court left it entirely for the jury to determine whether the evidence showed that the defendant in fact had confessed." *Id.*

¶ 36        Similarly, in other cases, we have held that the trial judge did not communicate an opinion when the challenged language was read in context, not that the trial judge's improper expression of opinion was remedied by a subsequent clarification or the existence of some evidence proving the elements of the charged offense. Thus, in *State v. Meyer*, we concluded that the trial judge's explanation during the sentencing phase of a capital trial that an alleged aggravating circumstance "applies equally to both murders" did not improperly suggest the aggravating factor had been proven because, read in context, the trial judge was "merely reiterat[ing] its previous admonition that 'the law as to both of the counts is generally the same since you will be considering the same aggravating and mitigating circumstances.' " 353 N.C. 92, 107 (2000).

¶ 37        Indeed, this case is largely indistinguishable from decisions in which we have held that a trial judge prejudicially erred in conveying his or her opinion regarding how the jury should resolve an important factual issue. For example, in *State v.*

*McEachern*, we held that the trial judge erred when he asked the prosecuting witness in a rape case whether she was "in the car when you were raped." 283 N.C. 57, 59–62 (1973). We reasoned that although the trial judge did not explicitly state an opinion regarding the defendant's commission of the alleged criminal offense, the way the trial judge framed the inquiry communicated this view because it "[a]ssumed that defendant had raped [the complaining witness]." *Id.* at 62. In *State v. Oakley*, we held that the trial judge erred when he asked a witness if the witness had "tracked *the defendant* to [a] house," despite the witness testifying only that he tracked some unknown individual to the house. 210 N.C. 206, 211 (1936) (emphasis added). Although the trial judge immediately clarified that he "didn't mean to say the defendant," we reasoned that the question improperly revealed a belief regarding an issue of such critical importance to the jury's deliberations that an immediate clarification was insufficient to guarantee the defendant a fair trial. *Id.*

¶ 38        As in *McEachern* and *Oakley*, the trial judge in this case assumed the existence of a fact which had not yet been decided by the jury and, in doing so, illustrated for the jury his opinion that the State had met its burden of proving an essential fact beyond a reasonable doubt.

¶ 39        I would also conclude that the trial judge's impermissible expressions of opinion prejudiced Austin. In examining whether the trial judge's violations of N.C.G.S. §§ 15A-1222 and 15A-1232 were prejudicial, we should consider (1) how

suggestive the trial judge's comments were, (2) how important the issue on which the trial judge expressed an opinion was to the jury's ultimate determination of guilt, and (3) the strength of the evidence supporting the defendant's conviction. In this case, all three factors indicate the trial judge's comments were extremely prejudicial.

¶ 40     First, the trial judge's comments implicitly, but unmistakably, informed the jury that in the trial judge's opinion, the complaining witness's narrative of events was true and there was no question as to whether Austin had assaulted her. Second, the comments addressed the sole disputed factual predicate the State needed to prove in order to obtain Austin's conviction. Third, the evidence of Austin's guilt—while uncontroverted—was not overwhelming. The only direct evidence the State presented at trial was the complaining witness's testimony, which was not entirely consistent with the statements she initially provided to law enforcement. The State also presented testimony from acquaintances of the complaining witness who, in broad strokes, corroborated the timeline of events on the night Austin purportedly committed the assault but who did not witness any part of the alleged altercation, and the State presented a photograph of the witness's injuries which she took herself, purportedly at some unspecified time after the assault occurred. Although this evidence was not directly called into dispute, it is not so convincing as to exclude the possibility that the alleged assault either did not occur or did not unfold in the manner the complaining witness described. The majority's statement of facts

describes a violent sexual offense, yet Austin was tried for misdemeanor assault on a female. This is precisely the kind of case, dependent on the testimony of a single witness, where a trial judge's communication of his belief in the defendant's guilt can tip the scales for the jury.

¶ 41        "Jurors entertain great respect for [the trial judge's] opinion, and are easily influenced by any suggestion coming from him [or her]." *Carter*, 233 N.C. at 583. In this case, the trial judge repeatedly conveyed his opinion that Austin perpetrated an assault on the complaining witness. Given just how suggestive the trial judge's statements were—and given that the statements cut to the core of the State's case against Austin—I conclude that the trial judge's expressions of opinion both violated N.C.G.S. §§ 15A-1222 and 15A-1232 and had such a prejudicial effect that there is a reasonable possibility of a different result absent the error. Accordingly, I respectfully dissent.